Linda CARON, Appellee,

v.

RELIANCE INSURANCE COMPANY,
Appellant.   (Two Cases).

Superior Court of Pennsylvania.

Argued Sept. 23, 1997.
Filed Nov. 25, 1997.
Reargument Denied Feb. 5, 1998.

Anthony R. Twardowski, Philadelphia, for appellant.

Jay N. Abramowitch, Wyomissing, for appellee.

Before BECK, SCHILLER and BROSKY, JJ.

SCHILLER, Judge.

Appellant, Reliance Insurance Company, appeals from the order entered by the Court of Common Pleas of Berks County denying its petition for leave to file a petition to vacate an arbitration award *nunc pro tunc,* and from the judgment entered in favor of appellee for $500,091.30. We vacate the judgment and remand for further proceedings.

FACTS:

On March 17, 1989, appellee, Linda Caron, was injured as a result of a three car collision which occurred near Reading, PA. Appellee was employed by Caron International Inc., an Illinois corporation, which had provided a 1986 Plymouth Voyager minivan for her business and personal use. However, at the time of the accident, though she was doing company business, she was using a friend's car purely as a matter of preference. As a result of the accident, appellee sustained multiple injuries and is disabled from any type of employment. After receiving almost $250,000 from the insurance carriers of the other two cars in the accident and from her friend's insurance carrier, appellee made a claim to appellant Reliance, Caron International's insurer, for underinsured motorist benefits.

Reliance's policy with Caron International covered 27 vehicles, including the minivan assigned to appellee. Appellee was not identified in the policy as an insured; however, she was listed on a proposal for insurance submitted by Reliance to the company as the driver of the minivan. Appellant denied coverage, and the parties submitted the matter to arbitration pursuant to the policy's arbitration clause. On April 6, 1994, after a hearing, a board of arbitrators concluded that appellee was not an "insured" under the policy because she was not operating a vehicle covered by the policy at the time of the accident. Appellee then filed a petition to vacate the arbitrators' decision, as well as a declaratory judgment action. On May 4, 1995, following consolidation of the actions, the trial court granted appellee summary judgment on the declaratory judgment action and granted appellee's petition to vacate the arbitration decision, holding that the insurance policy violated Pennsylvania public policy because it did not confer "class one" status on appellee. The trial court remanded the case to the arbitrators for further proceedings. Appellant then filed an appeal to this Court, which was quashed on September 29, 1995, as being interlocutory.

When the matter went before the arbitrators again, they concluded not only that appellee was covered but that she was allowed to stack the coverages of the twenty-seven vehicles so that the total underinsured benefits available to appellee was $27,000,000.[1] On May 7, 1996, the arbitration panel awarded appellee $745,000 in damages, which, after the offset for appellee's recoveries from the other parties in the accident, resulted in an award against appellant for $500,091.30. Appellant then attempted to file a petition to vacate this arbitration award, but due to an error by counsel it did not file it within the required 30 days. Appellee meanwhile filed a petition to confirm the arbitration award. Appellant then filed a petition for leave to file a petition to vacate the arbitration award *nunc pro tunc,* which the court denied on February 7, 1997. On February 17, 1997, the court granted appellee's confirmation petition, and the award was reduced to judg-

---

1. Though the policy carried uninsured/underinsured motorist benefits for $35,000 for each of the 27 vehicles, the arbitrators concluded that the $1,000,000 coverage for bodily liability amounts applied because Caron International had not explicitly waived its rights to purchase underinsured motorist benefits for an amount less than its bodily liability limits, as required by Pennsylvania law. *See* 75 Pa.C.S. §§ 1731, 1734.

ment four days later. This timely appeal from the judgment followed.

DISCUSSION:

Appellant now raises the following issues: (1) whether the trial court erred in refusing to allow it leave to file a new petition to vacate *nunc pro tunc;* (2) whether the trial court erred in concluding that the insurance policy violated Pennsylvania's public policy by not covering appellee as an insured; and (3) whether the arbitrators erred in holding that appellee was an insured who could stack the policies, and that the underinsured limits were $1,000,000 per vehicle.

Turning to appellant's first issue, Reliance argues that the trial court erred in refusing to allow it to file a petition to vacate the arbitration award of May 7, 1996, *nunc pro tunc.*

■ Under the Uniform Arbitration Act,[2] 42 Pa.C.S. § 7301 *et seq.,* a party has thirty days from the receipt of an arbitration award to petition the trial court to vacate that award. 42 Pa.C.S. § 7314(b). Here, the trial court held a hearing on appellant's petition for leave to file a petition to vacate *nunc pro tunc* and found that the arbitrators' May 7, 1996, award was delivered to the parties on May 9, 1996. Therefore, appellant's petition to vacate had to have been filed by June 10, 1996 to be timely.[3] The trial court found that due to the negligence of appellant's counsel,[4] appellant's petition to vacate was not filed by that date; instead, on June 20, 1996, appellant filed the *nunc pro tunc* request.

"[T]he time for taking an appeal cannot be extended as a matter of grace or mere indulgence." *Bass v. Commonwealth,* 485 Pa. 256, 259, 401 A.2d 1133, 1135 (1979). Extensions of time will only be granted in cases where there is fraud or some breakdown in the court's operation. *Id.* Here, the trial court specifically found that appellant's delay in filing a timely petition to vacate was due to the negligent conduct of appellant's counsel. *Cf. Bass v. Commonwealth, supra* (excusing delay where untimeliness caused by non-negligent conduct of counsel and his staff). In light of this finding, and given that the decision whether to permit a *nunc pro tunc* appeal is one entirely within the trial court's discretion, *see Lough v. Spring,* 383 Pa.Super. 85, 556 A.2d 441 (1989), we have no basis upon which to disturb the trial court's decision to deny appellant's petition for leave to file a petition to vacate *nunc pro tunc.*

■ As a result of this conclusion, we agree with appellee that any issue related to the arbitrators' decision of May 7, 1996, has been waived due to appellant's failure to file a timely petition to vacate, as required by 42 Pa.C.S. § 7314. *Maxton v. Philadelphia Housing Authority,* 308 Pa.Super. 444, 454 A.2d 618 (1982); *Emporium Area J.S.A. v. Anundson Const. & Bldg. Sup. Co.,* 402 Pa. 81, 166 A.2d 269 (1960). Therefore, appellant's third issue, alleging that the arbitrators erred in finding that appellee was entitled to stack $1,000,000 policy limits on the 27 vehicles, is regarded as waived.

■ Appellee further argues that the untimely petition to vacate also had the effect of waiving appellant's second issue: i.e., the challenge to the trial court's May 4, 1995, order overturning the arbitration panel's conclusion that appellee was not an "insured" under the policy. This decision by the trial court resulted in the case being remanded to the arbitration panel for a determination of what benefits were due appellee. At that time, appellant appealed that order to this Court; however, we quashed the appeal on the basis that a decision vacating an arbitration award and remanding for further pro-

---

**2.** Act of October 5, 1980, P.L. 693, No. 142, § 501(a).

**3.** As the thirty day period ended on June 8, 1996, which was a Saturday, the time deadline was extended to the following Monday, June 10, 1996, pursuant to Pa.R.Civ.P. 106.

**4.** Although appellant's counsel had prepared a petition to vacate on June 6, 1996, and had given

it to his firm's mail room to express mail to the court, the petition was mishandled by the firm's mail room. The trial court found that counsel was negligent in not trying to ascertain that the package was sent to its intended recipient prior to June 10, and in not having any procedures in place with its mail room to ensure that packages given by counsel to the mail room reached the desired location.

ceedings is an interlocutory order not ripe for appellate review. *See* Pa.R.A.P. 301, 341. Although 42 Pa.C.S. § 7320 allows an appeal from a court order vacating an arbitration award that does not direct a rehearing, this Court in *Boyce v. St. Paul Property & Liability,* 421 Pa.Super. 582, 594 n. 4, 618 A.2d 962, 969 n. 4 (1992), held that by implication this section means that an appeal cannot be taken where the trial court vacates the arbitration award and **does remand** the matter to the arbitrators for a rehearing. Thus, the trial court's order of May 4, 1995, being interlocutory, was not appealable until the arbitrators' award that followed on remand itself became a final order.[5] This did not occur until a judgment was entered on the trial court's docket on February 21, 1997, based on the trial court's confirmation of the award. 42 Pa.C.S. § 7320(3) (an appeal may be taken from a court order confirming an arbitration award). Because appellant has appealed the February 21, 1997, judgment following the confirmation of the arbitration award, the validity of the trial court's May 4, 1995 order vacating the first arbitration award is still reviewable. As a result, we now turn to appellant's second issue.

Appellant argues that the trial court erred in vacating the initial arbitration decision that appellee was not an "insured" under the insurance policy. In particular, appellant argues that the trial court exceeded the permissible scope of its review.

■ The Uniform Arbitration Act sets limits on the power of a trial court to vacate an arbitration award. Specifically, the statute provides, in relevant part:

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable [section 7341 only allows an award to be vacated if a party was denied a hearing or fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award];

(ii) there was evident partiality by an arbitrator appointed as a neutral or corruption or misconduct in any of the arbitrators prejudicing the rights of any party;

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing; ... or

(v) there was no agreement to arbitrate . . .

(2) The fact that the relief awarded by the arbitrators was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

42 Pa.C.S. § 7314(a). Under this limited standard, the resolution of factual disputes is within the province of the arbitrators. *Boyce, supra.* In addition, "[a]n allegation that a statutory arbitration award is contrary to law is not a sufficient basis for vacating the award." *Martin v. PMA Group,* 420 Pa.Super. 624, 629–30, 617 A.2d 361, 363 (1992). However, a trial court can review a clause in an insurance policy where the claimant alleges that such a provision is contrary to public policy. *See e.g. Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 648 A.2d 755 (1994).

■ In general, we will reverse a trial court's decision regarding whether to vacate an arbitration award only for an abuse of discretion or error of law. *Patton v. J.C. Penney Ins. Co.,* 445 Pa.Super. 317, 665 A.2d 510 (1995). However, where the trial court determines that a provision in an insurance policy violates the public policy of this Commonwealth, our standard of review is plenary as said issue presents a question of law for our determination. *See generally Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

■ In this case, the trial court correctly held that the question of whether appellee

---

**5.** This is akin to a trial court's denial of a motion for summary judgment, which is interlocutory and hence not appealable. *Goodman by Goodman v. Pizzutillo,* 452 Pa.Super. 436, 682 A.2d 363 (1996). However, this issue may be raised on appeal once the case is completed and judgment is entered.

was an insured was not before it, as that issue had been conclusively decided by the arbitration panel and was not reviewable under 42 Pa.C.S. § 7314. The court then turned to the question that it perceived was before it: whether the insurance policy provision governing uninsured and underinsured coverage violated Pennsylvania public policy. The record before the trial court contained the following stipulated facts: (1) appellee was acting in the scope and course of her employment at the time of the accident; (2) at the time of the accident, appellee was driving a friend's vehicle as a matter of personal preference—the minivan provided to her by Caron International was not unavailable due to a breakdown, loss, etc.; (3) appellee was not driving an automobile covered by the insurance policy; and (4) appellee was listed as the sole driver of the minivan in a Proposal for Insurance submitted to Caron International by appellant. From these facts, the trial court concluded that the insurance policy was illogical if it did not cover appellee while she was driving any vehicle other than the minivan because the policy then "would not protect the only individual whom it was intended to protect, i.e., [appellee] Caron, as the only driver of the minivan covered under the policy." *Slip opinion, Caron v. Reliance Insurance Co.,* Court of Common Pleas of Berks County, No.2061–94 A.D., 2062–94, A.D., p. 11, 24 Pa. D. & C.4th 322 (May 4, 1995). In essence, the trial court held that because appellee was identified in the proposal for insurance as the only driver of the minivan, she was entitled to "class one" status [6] and could receive benefits. As a result, the court held that the arbitrators' interpretation of the policy endorsement violated the public policy of this Commonwealth.

The Pennsylvania Supreme Court has explained how a court determines whether public policy is violated in a particular instance:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy ...

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. There must be a positive, well-defined, universal public sentiment, deeply integrated in the customs and beliefs of the people and in their conviction of what is just and right and in the interests of the public weal ... Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision.

*Hall v. Amica Mut. Ins. Co., supra,* at 347–48, 648 A.2d at 760 (quotations omitted). The Supreme Court in *Hall* took notice of the relevant provisions of the Motor Vehicle Financial Responsibility Law (MVFRL),[7] 75 Pa.C.S. § 1701 *et seq.,* in particular 75 Pa.C.S. § 1731(a) which provided that while uninsured and underinsured motorist coverages must be **offered** to insureds, purchase of such coverage is **optional**. In light of this statutory provision, the Supreme Court stated:

Although uninsured motorist coverage serves the purpose of protecting innocent victims from irresponsible uninsured motorists, that purpose does not rise to the level of a public policy overriding every other consideration of statutory construction.

*Id.* at 348, 648 A.2d at 760–61.

In this case, in the policy issued by Reliance, the "insured" is clearly defined in sev-

---

**6.** As explained by this Court, most automobile insurance policies identify three classes of intended insureds: (1) class one—includes the named insured and any designated insured, and spouses or relatives if members of the same household; (2) class two—any other person operating an insured vehicle; and (3) class three—any person entitled to recover damages because of bodily injury sustained by an insured under

either # 1 or # 2. *Jeffrey v. Erie Ins. Exchange,* 423 Pa.Super. 483, 500, 621 A.2d 635, 644 (1993) (*en banc*), *alloc. denied,* 537 Pa. 651, 644 A.2d 736 (1994).

**7.** Act of February 12, 1984, P.L. 26, No. 11, § 3. The MVFRL replaced the No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 *et seq.*

eral different areas as "Caron International, Inc." The Pennsylvania Uninsured and Underinsured Motorists Coverage Endorsement contained in the policy reads:

B.   Who Is An Insured

1.   You.

2.   If you are an individual, any "family member."

3.   Anyone else occupying a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

It is thus clear that appellee was not covered under the explicit terms of the insurance policy at the time of the accident because she was not driving a vehicle covered under the policy; appellee was driving her friend's car not because the minivan had broken down or needed repair but simply as a matter of preference.[8]  In addition, she was not entitled to benefits as a class one insured because the insurance policy's designation of "you" as the insured referred to Caron International as the purchaser of the policy, not the drivers of the covered vehicles.[9]  We therefore must examine the trial court's conclusion that public policy dictated that appellee was entitled to class one status by virtue of her being listed as a driver on the proposal for insurance.

■ This Court has never held that simply being listed as a driver on an insurance policy automatically transforms an individual into a class one insured.  In fact, we reached the opposite conclusion in *Amica Mut. Ins.*

*Co. v. Donegal Mut. Ins. Co.*, 376 Pa.Super. 109, 545 A.2d 343 (1988), where we held that the plaintiff could not recover under her father's automobile insurance policy, though she was listed as a driver of one of the vehicles covered by the policy, when she was not driving a vehicle covered by the policy.[10]

In *Hunyady v. Aetna Life & Cas.*, 396 Pa.Super. 476, 578 A.2d 1312 (1990), *aff'd*, 530 Pa. 25, 606 A.2d 897 (1992), this Court held that a spouse was not entitled to receive underinsured motorist benefits under a policy covering her husband through his employer because she was not driving a vehicle insured by the company.  In response to the spouse's public policy argument, we stated that public policy does not require "a carrier to provide underinsured motorist benefits to parties not in the category of 'insureds.'" *Id.* at 480, 578 A.2d at 1314.

In *State Farm Mut. Auto. Ins. Co. v. Brnardic*, 441 Pa.Super. 566, 657 A.2d 1311 (*en banc*), *alloc. denied*, 543 Pa. 695, 670 A.2d 142 (1995), this Court held that an injured claimant could not recover from an employee's personal insurance policy when the employee was driving a car owned and insured by his employer.  In rejecting the claimant's argument that such an exclusion violated public policy, the *en banc* panel held that public policy was not violated by an insurance company's desire to insure only cars identified in the employee's personal policy, and that to invalidate an exclusion denying coverage for non-identified cars would raise insurance costs in this Common-

---

8.  This Court has previously interpreted similar policies to preclude benefits for injuries sustained by an individual while driving a vehicle not covered by the insurance policy. *See e.g. Steinbacher v. Page*, 410 Pa.Super. 586, 600 A.2d 608 (1991).

9.  In *Hunyady v. Aetna Life & Cas.*, 396 Pa.Super. 476, 578 A.2d 1312 (1990), *aff'd*, 530 Pa. 25, 606 A.2d 897 (1992), this Court held that the appellant was not entitled to receive underinsured motorist benefits under a policy covering her husband through his employer because she was not driving a vehicle insured by the company. In interpreting the policy, we concluded that the term "you" under "who is an insured" indicated the employer, not its employees. Of course, a policy could specifically cover personal cars of

employees, but the one at issue here did not. Such a policy was present in *Lastooka v. Aetna Ins. Co.*, 380 Pa.Super. 408, 552 A.2d 254 (1988), where we held that the decedent's estate was entitled to underinsured motorist benefits when the decedent was fatally injured in a non-covered vehicle under his business insurance policy because that policy defined "insured" to include not only the decedent's business, but the decedent individually.

10.  Our decision in *Marchese v. Aetna Cas. & Sur. Co.*, 284 Pa.Super. 579, 426 A.2d 646 (1981), is distinguishable because in that case the employee seeking benefits was not only listed as a driver, but was also driving a vehicle owned by his employer.

wealth, a result that in itself may violate public policy.

In *Insurance Co. of PA. v. Hampton*, 441 Pa.Super. 382, 657 A.2d 976, *alloc. denied*, 542 Pa. 647, 666 A.2d 1056 (1995), a son, who was not identified as an insured under the subject policy, attempted to recover uninsured motorist benefits under his mother's automobile insurance policy based on the fact that he resided with his mother. The policy did specifically cover users of the mother's vehicle, but the son was driving his motorcycle at the time of the accident. We rejected appellant's argument that to deny him coverage violated public policy, reasoning that "the MVFRL was never intended to apply in a manner that would allow individuals and family members who owned several vehicles to purchase coverage for only one vehicle and receive uninsured or underinsured motorist benefits while operating a vehicle which was not insured." *Id.* at 389–90, 657 A.2d at 980.

The lesson than can be gleaned from these cases is that there is nothing in Pennsylvania public policy which prohibits an insurer from issuing a policy which insures a company's vehicles, but restricts the extent of an employee's coverage to when he/she is operating one of those vehicles. Thus, Caron International's decision to insure its 27 vehicles, and its employees only when they were driving one of those 27 vehicles, was entirely permissible, especially given that the policy contained a contingency which extended coverage to other vehicles driven by an employee if a specifically designated vehicle was inoperable.[11] Such a result is consistent with one of the major considerations that prompted the passage of the MVFRL: the rapidly escalating cost of automobile insurance. *Jeffrey v. Erie Ins. Exchange*, 423 Pa.Super. 483, 621 A.2d 635 (1993) (*en banc*), *alloc. denied*, 537 Pa. 651, 644 A.2d 736 (1994). If we were to embrace the trial court's position, then Reliance would not only be insuring the 27 vehicles owned by Caron International but also any vehicle, whether known or unknown

to Reliance, driven by one of the individuals identified in the proposal for insurance when the individual happened to be on company business. Again we wish to reiterate that the stipulated facts here establish that appellee was driving an uncovered vehicle as a matter of preference and in that regard was not fulfilling any company directive which would provide her coverage under the policy. Employees have no right to expect coverage to follow them to any vehicle they might choose. Such a result would be unfair to the insurance company, which bases its rate not only on the driver's record but also on the type of car being insured. As this Court has held, "an insurer needs to know what cars its insured regularly drives in order to charge a proper rate, or even decide whether to take the risk of insuring the driver." *State Farm Mut. Auto. Ins. Co. v. Brnardic, supra*, at 570, 657 A.2d at 1313. To hold otherwise would be to inject such uncertainty into the insurance process as to virtually guarantee a rapid escalation of insurance costs, precisely the harm the MVFRL seeks to avoid.

Therefore, we are compelled to conclude that the trial court erred as a matter of law in concluding that appellant's policy, as interpreted by the arbitrators to deny appellee coverage, violated the public policy of this Commonwealth. Accordingly, we are compelled to vacate the judgment entered in favor of appellee, and remand this case to the trial court for the confirmation of the arbitrators' award of April 6, 1994 finding in favor of appellant.

CONCLUSION:

The trial court erred in concluding that the arbitrators' decision denying appellee underinsured motorist coverage violated this Commonwealth's public policy.

Consequently, the judgment entered by the Court of Common Pleas of Berks County is vacated, and the case remanded to that court for the confirmation of the arbitrators'

---

**11.** Compare *Bamber v. Lumbermens Mut. Cas. Co.*, 451 Pa.Super. 548, 680 A.2d 901 (1996), where we held that an employee driving his personal vehicle was an insured under his employer's automobile insurance policy where the policy included autos "owned by your employees or partners or members of their households but only while used in your business or your personal affairs." Had such language been in Caron International's policy with Reliance, then appellee clearly would have been an insured.

award of April 6, 1994.  Jurisdiction relinquished.