Richard Leon **WERLINE**, Appellant,

v.

**EAST TEXAS SALT WATER DISPOSAL COMPANY, INC.**, Appellee.

No. 06–06–00039–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 30, 2006.

Decided Dec. 18, 2006.

Rehearing Overruled Jan. 11, 2007.

Gregory J. Wright, Jason A. Holt, Bunt & Wright, PLLC, Longview, for appellant.

Gregory D. Smith, Ramey & Flock, PC, Tyler, Jerry S. Harris, Harbour, Smith, Harris & Merritt, PC, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Richard Leon Werline appeals the denial of his application to confirm an arbitration award rendered in his favor under the

Texas Arbitration Act (TAA).[1] Werline had instituted an arbitration proceeding against East Texas Salt Water Disposal Company, Inc. (East Texas) for breaching its contractual duty to employ Werline as its operations manager. The arbitrator found East Texas had materially breached the contract and awarded Werline twenty-four months' pay as damages, consistent with the terms of Werline's employment contract. When Werline filed an application to confirm the award, East Texas filed a motion to vacate the award, alleging that there was no evidence to support the arbitrator's decision and that the arbitrator committed a gross mistake. The trial court denied Werline's motion to confirm, granted East Texas' motion to vacate, and directed a rehearing before another arbitrator. Werline brings this interlocutory appeal.

The first issue before this Court is whether we have jurisdiction over this appeal. East Texas contends we lack jurisdiction because, in addition to denying the application to confirm the arbitrator's award, the trial court vacated the award and directed a rehearing. We conclude, based on the plain language of the statute, that we do have jurisdiction over this appeal. The second issue is whether the trial court erred in denying Werline's application to confirm the arbitration award. Because the arbitrator did not commit such a gross mistake that would imply bad faith or failure to exercise honest judgment, the trial court erred in denying Werline's application to confirm the award. We, therefore, reverse the trial court's judgment and render judgment confirming the arbitrator's award.

FACTUAL BACKGROUND

This case centers around an employment agreement entered into by and between Werline and East Texas November 30, 2000. Werline, an employee of East Texas since 1996, alleges East Texas committed a material breach of his employment contract when it transferred him to a new position. The key terms of the employment agreement are as follows:

1. Initial Term. Subject to the terms and conditions specified in this Agreement, Employer agrees to continue to employ Employee as Operations Manager for the Initial Term as herein defined. In such position, Employee shall be responsible for those duties normally associated with that position, subject to such policies and guidelines as may be reasonably established from time to time by the Board of Directors of Employer. Employee hereby agrees to continue in such employment for a five (5) year period commencing on the date hereof . . .

. . . .

6. Employer Breach. In the event of the breach of any material provision of this Agreement by Employer, which shall include, but not be limited to, severance and termination of Employee's Employment other than for cause, the Employee shall have the express contractual right and option to terminate his employment with Employer or respond to such a breach upon twenty (20) days written notice to Employer. In the event of termination or response by Employee under the conditions last provided, the Employer shall, as severance pay, be obligated and have a duty to continue pay to and provide Employee monthly payments for twenty-four (24) successive months, with each such payment to be equal to Employee's monthly

---

1. We note the Federal Arbitration Act (FAA) "preempts state statutes to the extent they are inconsistent with that Act." *Jack B. Anglin Co.* *v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). Neither party contends the FAA preempts the TAA in this case.

base pay for the month immediately preceding such termination ... or Employer may elect to pay Employee, as severance payment, a lump sum equal to 100% of that amount which would have been paid had such payments been made monthly as last provided.

Although the contract did not provide a job description for the position of operations manager, Werline testified the following is a fair summary of the duties of the operations manager at all relevant times: (1) management of day-to-day field operations through supervision of field personnel, including foremen, hourly employees, and superintendent; (2) approving financial transactions related to operations; (3) management representation with the union; (4) representing the company with the railroad commission; (5) supervision and management of the company engineer, including the company's survey crew; (6) supervision and management of the purchasing department; and (7) evaluation of special projects. Nick Adams, former President and CEO of East Texas,[2] testified the above summary is accurate.

East Texas modified Werline's duties in a memorandum from Adams, dated April 21, 2003, providing as follows: "Concerning personnel, Richard Werline will be temporarily assigned essentially full-time to investigate the alternative businesses of a [Skimmed Oil Recovery] plant and the disposal of non-Woodbine water. Most of his other duties as Operations Manager will be handled by myself or other people." Werline testified he thought the assignment was merely temporary until the June 5, 2003, board meeting.

Following the June 5, 2003, board meeting, Werline was informed that he would continue investigating alternative lines of business and that Ricky Clements, the new president of East Texas, would assume most of the duties performed by the operations manager. The chief engineer was informed he should now report directly to Clements. Clements testified that Werline's assignment to investigate alternate business lines was "permanent until [the Board of Directors] found out there was going to be a change." Werline delivered a letter to Clements, dated July 28, 2003, notifying East Texas that the company had breached his employment agreement by removing him (Werline) from the duties normally associated with the position of operations manager.

As contractually agreed by the parties, Werline's claim was submitted to binding arbitration. Following a three-day hearing, the arbitrator, in a twelve-page judgment, found, among other things, that East Texas' primary business of disposal of salt water from East Texas oil-field production was declining. The arbitrator further concluded East Texas had materially breached the contract by not continuing to employ Werline as operations manager and awarded Werline twenty-four months' compensation under the severance provisions of the agreement, as well as stipulated attorney's fees and expenses. Werline filed a motion in the trial court to confirm the arbitrator's award. East Texas filed a motion to vacate the arbitrator's award. The trial court found that there was no evidence to support several of the arbitrator's findings and that

the material factual findings in the Award are so against the evidence and the stipulated and judicially admitted facts before the Arbitrator that they manifest gross mistakes in fact and law, a failure to exercise honest judgment, the lack of impartiality and constitute

---

**2.** Adams resigned as president and CEO of East Texas May 22, 2003, but remained an employee of East Texas until December 31, 2003.

willful misconduct resulting in an award that was arbitrary and capricious.

The trial court denied Werline's motion to confirm, vacated the arbitration award, and ordered a rehearing.

## JURISDICTION

East Texas contends this Court lacks jurisdiction because the trial court vacated the award *and* directed a rehearing. In support of its position, East Texas directs our attention to a decision of the Fourteenth District Court of Appeals holding that it lacked jurisdiction over interlocutory appeals of a denial of confirmation when the trial court also vacated the award and directed a rehearing. *See Prudential Secs., Inc. v. Vondergoltz*, 14 S.W.3d 329 (Tex.App.-Houston [14th Dist.] 2000, no pet.). In addition, East Texas contends other states, with the exception of Missouri, have uniformly held they lack jurisdiction under similar circumstances.

*The Plain Language of the Statute*

■ Generally, only final decisions of trial courts are appealable. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex.1985); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.012 (Vernon 1997). The Legislature has, however, authorized the appeal of a number of interlocutory orders. The TAA provides:

(a) A party may appeal a judgment or decree entered under this chapter or an order:

(1) denying an application to compel arbitration made under Section 171.021;

(2) granting an application to stay arbitration made under Section 171.023;

(3) confirming or denying confirmation of an award;

(4) modifying or correcting an award; or

(5) vacating an award without directing a rehearing.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.098 (Vernon 2005). Section 171.098 is substantially similar to Section 19 of the Uniform Arbitration Act. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098 *with* UNIF. ARBITRATION ACT § 19, 7 Part I U.L.A. 714 (2005).

■ The dispute in this case is whether denial of a motion to confirm an arbitration award can be appealed when the trial court also vacates the award and directs a rehearing. When interpreting a statutory provision, we seek to find and apply the intent of the Legislature; and if the text is unambiguous, we will be guided by "the statute's plain language unless that interpretation would lead to absurd results." *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176–77 (Tex.2004); *see City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003). Under the plain language of the statute, a party can appeal the denial of an application to confirm an arbitration award, but cannot appeal an order which vacates an award and directs a rehearing. East Texas argues that the plain language of subsection (a)(3) should not control.

*Texas Cases*

As noted above, East Texas directs our attention to the *Vondergoltz* case.[3] In that

---

**3.** The other Texas cases cited by East Texas are distinguishable on the basis that the parties did not attempt to appeal a denial of confirmation. *See Stolhandske v. Stern*, 14 S.W.3d 810 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *see also Bison Bldg. Materials, Ltd. v. Aldridge*, No. 01–05–00330–CV, 2006 WL 2641280, 2006 Tex.App. LEXIS 8162, —— S.W.3d —— (Tex.App.-Houston [1st Dist.] Sept. 14, 2006, no pet. h.); *Poole v.*

case, the Fourteenth court held it lacked jurisdiction over an appeal of the denial of an application to confirm because the trial court ordered a rehearing. *Vondergoltz*, 14 S.W.3d at 331; *see also Poole*, 2000 WL 1721150, at \*1, 2000 Tex.App. LEXIS 6825, at \*4. The *Vondergoltz* court concluded an order denying confirmation of an arbitration award is the functional equivalent of an order vacating an award. *Vondergoltz*, 14 S.W.3d at 331. The court reasoned that "[t]o hold otherwise would render the language 'without directing a rehearing' without effect and would elevate form over substance by allowing an appeal where rehearing is directed in denying a request for confirmation but not in granting a request to vacate an award." *Id.* (citations omitted).

*Decisions in Other States*

According to East Texas, the courts of other states that have examined the issue, with the lone exception of Missouri, have uniformly found they lacked jurisdiction. East Texas contends this Court should follow the lead of the majority of these other state courts because the TAA provides that it "shall be construed to effect its purpose and make uniform the construction of other states' law applicable to an arbitration." [4]

East Texas cites decisions from Texas and at least seven states in support of its argument.[5] Several of these cases do contain dictum favorable to East Texas' position.[6] Most, however, are distinguishable on the basis that the parties did not attempt to appeal a denial of confirmation.[7] Only the Fourteenth District Court of Appeals of Texas, Minnesota, and the District of Columbia have found a lack of jurisdiction when a party appealed the denial of an application to confirm. *See Vondergoltz*, 14 S.W.3d at 331; *Kowler Assocs. v. Ross*, 544 N.W.2d 800, 801 (Minn.Ct.App.

*USAA Cas. Ins. Co.*, Nos. 14–99–00740–CV, 14–99–01056–CV, 2000 WL 1721150, at \*1, 2000 Tex.App. LEXIS 6825, at \*4 (Tex.App.-Houston [14th Dist.] Oct. 12, 2000, pet. denied) (not designated for publication); *cf. J.D. Edwards World Solutions Co. v. Estes, Inc.*, 91 S.W.3d 836 (Tex.App.-Fort Worth 2002, pet. denied) (vacatur without directing rehearing). We note, however, that a few of the cases do contain dictum favorable to the position taken by East Texas. *See Stolhandske*, 14 S.W.3d at 810; *see also Aldridge*, 2006 WL 2641280, 2006 Tex.App. LEXIS 8162; *Poole*, 2000 WL 1721150, 2000 Tex. App. LEXIS 6825.

4. Tex. Civ. Prac. & Rem.Code Ann. § 171.003 (Vernon 2005); *see Pullara v. Am. Arbitration Ass'n*, 191 S.W.3d 903, 907 (Tex.App.-Texarkana 2006, pet. denied).

5. East Texas also cites *Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276 (5th Cir. 1994). This case is distinguishable because it did not concern an appeal from a denial of an application to confirm and the court concluded the FAA governed the dispute at issue. Although the court noted neither TAA nor UAA "allow appeals from orders which both vacate an award and direct a rehearing of the dispute," the Fifth Circuit's decision relied on the FAA. *Id.* (construing predecessor to Section 171.098). Because the FAA contains different procedural standards for interlocutory appeals, this case has limited persuasive value.

6. *See Me. Dep't of Transp. v. Me. State Employees Ass'n*, 581 A.2d 813, 815 (Me.1990); *Neb. Dep't of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308, 312 (2001); *Caron v. Reliance Ins. Co.*, 703 A.2d 63 (Pa.Super.Ct.1997).

7. *See City of Ft. Lauderdale v. Fraternal Order of Police, Lodge No. 31*, 582 So.2d 162 (Fla. App.1991); *Max Rieke & Bros., Inc. v. Van Deurzen & Assocs., P.A.*, 34 Kan.App.2d 340, 118 P.3d 704, 708 (2005); *Me. State Employees Ass'n*, 581 A.2d at 815; *Struss*, 623 N.W.2d at 312; *Caron*, 703 A.2d 63; *Boyce v. St. Paul Prop. & Liab. Ins. Co.*, 421 Pa.Super. 582, 618 A.2d 962 (1992); *Double Diamond Constr. v. Farmers Coop. Elevator Ass'n of Beresford*, 656 N.W.2d 744 (S.D.2003).

1996); *Connerton, Ray & Simon v. Simon,* 791 A.2d 86, 88 (D.C.2002).

On the other hand, a state court in Missouri has determined it has jurisdiction to entertain such appeals. In *Stewart,* the Missouri Court of Appeals held it had jurisdiction to consider an appeal from a denial of an application to confirm. *Nat'l Ave. Bldg. Co. v. Stewart,* 910 S.W.2d 334 (Mo.App. S.D.1995). There, as in the instant case, the trial court denied confirmation of the award, vacated the award, and directed a rehearing before a new panel of arbitrators. *Id.* at 338. The *Stewart* court noted that denying confirmation and vacating the award were clearly bases for appealing and concluded that directing a rehearing before a new panel did not extinguish the right to appeal.[8] *Id.* at 341. The court reasoned that otherwise the process could "continue ad infinitum" and noted its conclusion was consistent with Missouri's policy of allowing an appeal from a decision to grant a motion for new trial.[9] *Id.*

*This Court has Jurisdiction*

We disagree with *Vondergoltz.* We believe the interpretation of the statute, as expressed in that opinion, is contrary to the plain language of the statute, and in essence, rewrites it. Further, that interpretation destroys the benefits of the arbitral process and could indefinitely prevent a party from appealing. The plain language of the statute should control.

■ Under the interpretation in *Vondergoltz,* subsection (a)(3) is rendered essentially meaningless. "[E]very word in a statute is presumed to have been used for a purpose," and we attempt to give effect to each clause and word if reasonably possible. *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 593 (Tex. 2000). The interpretation applied in *Vondergoltz* essentially adds the phrase "without directing a rehearing" into subsection (a)(3), and thereby rewrites the statute. Under the TAA, a court must confirm an award unless grounds exist for vacating, modifying, or correcting an arbitration award. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.087 (Vernon 2005). Thus, unless the trial court fails to follow the statutory procedures, a denial of an application to confirm must be accompanied by a vacatur or other order. Under *Vondergoltz,* an interlocutory appeal would only be authorized under subsection (a)(3) in the rare situation when the trial court denies a motion to confirm, but fails to vacate the award. Thus, only if the trial court refuses to follow the statutory procedures would an interlocutory appeal be available under subsection (a)(3). *Vondergoltz* renders subsection (a)(3) meaningless under the guise of preventing subsection (a)(5) from being meaningless.

---

**8.** East Texas contends the Missouri court might decide *Stewart* differently today. In support of this speculation, East Texas cites *Crack Team USA, Inc. v. American Arbitration Ass'n,* 128 S.W.3d 580 (Mo.Ct.App.2004). However, in *Crack Team,* the trial court did not deny a motion to confirm. *Id.* The court cited *Stewart* and noted it was faced with a different factual scenario. *Id.* At least two recent decisions have indicated Missouri is not retreating from its holding. *See Air Shield Remodelers v. Biggs,* 969 S.W.2d 315, 316 (Mo.Ct.App.1998); *see also Whitney v. Alltel Commc'ns, Inc.,* 173 S.W.3d 300, 306 (Mo.Ct.App.2005) (suggesting right to appeal in dicta).

**9.** In *Vondergoltz,* the Fourteenth court noted that, "to the extent an order directing rehearing of an arbitration is analogous to an order granting a motion for new trial, the rule in Texas that the latter is not final or appealable dictates a result contrary to that reached in *Stewart* by reference to the opposite rule." *Id.* (citations omitted). But, see discussion in footnote 10 below.

When two provisions govern the same subject matter, an effort should be made to harmonize and give effect to both provisions. *See Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 531 (Tex.2002). We are to presume that "the entire statute is intended to be effective." TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005). As discussed above, *Vondergoltz* renders subsection (a)(3) meaningless and essentially rewrites the statute. The plain language of the statute, though, gives effect to both subsections. Under the plain language of the statute, a party can appeal the denial of an application to confirm, but is prohibited from appealing from the granting of a vacatur which directs a rehearing. The word "denying" in subsection (a)(3) is not meaningless because a party can appeal from an order denying an application to confirm an arbitration award. The phrase "without directing a rehearing" is not meaningless because a party is still prohibited from appealing from an order vacating an arbitration and directing a rehearing.

We further believe *Vondergoltz* destroys the benefits of the arbitral process and creates the possibility that appeal will be denied indefinitely. The purpose of arbitration is to avoid the formalities, delay, and expense of ordinary litigation. *Ferguson v. Ferguson,* 110 S.W.2d 1016, 1021 (Tex.Civ.App.-Eastland 1937, no writ); *see New Process Steel Corp. v. Titan Indus. Corp.,* 555 F.Supp. 1018, 1021 (S.D.Tex.1983). Allowing interlocutory appeals furthers the efficiency of arbitration by deciding the disputed issue before the costs of a second arbitration are borne by the parties. In addition, as the Missouri court noted, the process could continue *ad infinitum.* The trial court could continue to grant vacatur multiple times until the result it desires is reached or one of the party's resources are exhausted.

We agree with *Stewart* that the trial court's order granting a motion to vacate and directing a rehearing does not extinguish a party's right to appeal the denial of its motion to confirm.[10] While we note a few courts have disagreed, there is no uniform consensus on whether an interlocutory appeal is permitted. The statute's plain language is clear and unambiguous—this Court has jurisdiction to entertain appeals from orders denying confirmation.

## ON THE MERITS

In his two points of error, Werline contends the trial court erred in denying his motion to confirm the arbitrator's award. The trial court found there was no evidence: (1) of a material breach of any provision, (2) the company's board acted unreasonably, or (3) supporting a finding that Werline was terminated, constructively or otherwise. In addition, the trial court found the arbitrator committed a gross mistake. Werline contends there is sufficient evidence to support the arbitra-

10. East Texas emphasizes that Missouri allows an appeal from an order granting a motion for new trial. We are not persuaded that the differences between the respective policies of Texas and Missouri concerning motions for new trial dictate a different result. There are significant differences between a motion for new trial and a motion to vacate an arbitration award. The standards for granting the motions are extraordinarily different. A trial court has much greater discretion in granting a motion for new trial than in granting a motion to vacate an arbitration award. A motion for new trial is granted by a trial court who heard all of the evidence and observed the demeanor of the witnesses. A motion to vacate is granted by a trial court who at best has a transcript of the arbitration hearings. Because of these significant differences between a motion for new trial and a motion to vacate an arbitration award, the fact that Missouri allows a party to appeal from an order granting a new trial is not a significant factor in our analysis.

tor's award and that the arbitrator did not commit a gross mistake. We agree. As discussed below, there was more than a scintilla of evidence supporting the arbitrator's award, even if the trial court was authorized to review the legal sufficiency of the evidence. Further, the arbitrator's award, even if erroneous, was not such a gross mistake as to indicate bad faith or a failure to exercise honest judgment.

*Standard of Review*

█ East Texas cites *Koch v. Koch,* 27 S.W.3d 93, 95 (Tex.App.-San Antonio 2000, no pet.), and *Henry v. Halliburton Energy Services, Inc.,* 100 S.W.3d 505, 510 (Tex. App.-Dallas 2003, pet. denied), for its position that the appropriate standard of review is abuse of discretion. We are not convinced that an abuse of discretion is the appropriate standard of review.[11] Numerous other cases have utilized a de novo review for vacation, modification, or confirmation of an arbitration award. *See, e.g., Brabham v. A.G. Edwards & Sons, Inc.,* 376 F.3d 377, 380 (5th Cir.2004); *Brook v. Peak Int'l, Ltd.,* 294 F.3d 668, 672 (5th Cir.2002) (de novo standard "intended to reinforce the strong deference due an arbitrative tribunal"); *Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys., Inc.,* 115 S.W.3d 16, 18 (Tex.App.- Fort Worth 2003, pet. denied); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 250 (Tex. App.-Houston [14th Dist.] 2003, pet. de-

nied); *Thomas James Assocs., Inc. v. Owens,* 1 S.W.3d 315, 320 (Tex.App.-Dallas 1999, no pet.); *Int'l Bank of Commerce-Brownsville v. Int'l Energy Dev. Corp.,* 981 S.W.2d 38, 43 (Tex.App.-Corpus Christi 1998, pet. denied). We will review de novo the trial court's denial of Werline's application to confirm.[12]

█ Our review of the arbitrator's finding, though, is extraordinarily narrow. *Cooper v. Bushong,* 10 S.W.3d 20, 24 (Tex. App.-Austin 1999, pet. denied). Because arbitration is favored as a means of dispute resolution, every reasonable presumption must be indulged to uphold the arbitrator's decision, and none is indulged against it. *Id.; J.J. Gregory Gourmet Servs. v. Antone's Import Co.,* 927 S.W.2d 31, 33 (Tex.App.-Houston [1st Dist.] 1995, no pet.). "Review is so limited that an arbitration award may not be vacated even if there is a mistake of fact or law." *Faulconer, Inc. v. HFI Ltd. P'ship,* 970 S.W.2d 36, 39 (Tex.App.-Tyler 1998, no pet.); *see Nuno v. Pulido,* 946 S.W.2d 448, 452 (Tex. App.-Corpus Christi 1997, no writ). "An arbitration award is to be given the same weight as a trial court's judgment, and the reviewing court may not substitute its judgment for the arbitrator's merely because it would have reached a different result." *Koch,* 27 S.W.3d at 96.

*Grounds to Vacate*

█ The common-law grounds for vacating an arbitration award are as fol-

---

**11.** The San Antonio Court of Appeals adopted the abuse of discretion standard of review in *Koch* without citing any authority. *See Koch,* 27 S.W.3d at 95 (arbitration concerning prenuptial agreement). In *Henry,* the Dallas Court of Appeals cited an opinion reviewing a motion for new trial as authority. *Henry,* 100 S.W.3d at 509 (citing *Chavarria v. Valley Transit Co.,* 75 S.W.3d 107, 110 (Tex.App.-San Antonio 2002, no pet.)).

**12.** In the hearing before the trial court in this case, there was no testimony or evidence oth-

er than the transcripts of the arbitration hearing and the statements of counsel. Therefore, the trial court is not in an appreciably better position to review the transcripts of the arbitration proceeding than we are. If evidence had been introduced at the hearing, an abuse of discretion standard of review might be appropriate to review any factual findings made by the trial court based on evidence presented at the hearing. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

lows: (1) fraud; (2) misconduct; or (3) such gross mistake as would imply bad faith and failure to exercise honest judgment. *Riha v. Smulcer,* 843 S.W.2d 289, 292 (Tex.App.-Houston [14th Dist.] 1992, writ denied).[13] A gross mistake is a mistake that implies bad faith or a failure to exercise honest judgment and results in a decision that is arbitrary and capricious. *Bailey & Williams v. Westfall,* 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). A judgment rendered after honest consideration given to conflicting claims, no matter how erroneous, is not arbitrary and capricious. *Id.* In addition, the parties agreed at trial that the trial court could reverse the award if there was "no evidence" to support it.[14]

### Error in Failure to Confirm

The trial court relied on two grounds in vacating the award: no evidence and gross mistake. As noted above, the trial court found there was no evidence: (1) of a material breach of any provision; (2) that the company's board acted unreasonably; or (3) supporting a finding that Werline was terminated, constructively or otherwise. According to Werline, the trial court

erred because there is evidence to support the arbitrator's award and the arbitrator did not commit a gross mistake.

As argued by Werline, there is evidence to support every element of a breach of contract. The elements of a breach of contract claim are as follows: (1) there is a valid, enforceable contract; (2) the claimant performed as required under the contract; (3) the defendant has breached the contract; and (4) the defendant's breach caused the claimant injury. *Valero Mktg. & Supply Co. v. Kalama, Int'l,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Landrum v. Devenport,* 616 S.W.2d 359, 361 (Tex.App.-Texarkana 1981, no writ). There is no dispute that the employment agreement is a valid enforceable contract. It was generally recognized within East Texas that Werline excelled at his job. Werline testified he wanted to be operations manager because he had been involved in operations his entire career, was "good at it," and believed his job was more secure as operations manager.

Werline testified he went to work for East Texas with the intent to remain em-

**13.** We note East Texas has not alleged any grounds under the TAA. Under that Act, an arbitration award should be vacated if the rights of a party were prejudiced by evident partiality, corruption, misconduct, or willful misbehavior of an arbitrator. *IPCO–G & C Joint Venture v. A.B. Chance Co.,* 65 S.W.3d 252, 256 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *see* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098 (Vernon 2005). Grounds under the TAA are cumulative of the common law. *Riha,* 843 S.W.2d at 292.

**14.** Werline states in his reply brief that he does not concede the trial court could vacate an arbitration award based on a finding of "no evidence" of any given issue. At the hearing before the trial court, however, Werline's attorney stated, "no evidence is about the only way [East Texas] can attack the validity of this particular award." The parties

have failed to cite any caselaw authorizing a "no-evidence" review, and our own search has not found any Texas cases recognizing a "no-evidence" review. We are not convinced an arbitration award can be reviewed for legal sufficiency of the evidence. The First Court of Appeals has held: "[i]n the absence of a statutory or common law ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints, including the sufficiency of the evidence to support the award." *A.B. Chance Co.,* 65 S.W.3d at 256; *see also Antone's Import Co.,* 927 S.W.2d at 33; *cf. Kergosien v. Ocean Energy, Inc.,* 390 F.3d 346, 353 (5th Cir.2004); *Brabham,* 376 F.3d at 381–85. However, it is not necessary for us to decide this issue since, as discussed below, there is clearly more than a scintilla of evidence supporting the arbitrator's award.

ployed there until retirement. In the new position, Werline was no longer in charge of field operations, which comprised approximately seventy to eighty percent of the total budget of East Texas. He was also removed as management representative in an ongoing union grievance. Key operational personnel were informed to report to Clements instead of Werline. Of the duties discussed earlier, the only duty which Werline retained in his new position was the duty to investigate new lines of business. In addition, there were multiple attempts by Clements to convince Werline to accept a six-month severance package.[15]

East Texas contends, on several grounds, that the trial court was within its discretion in vacating the award: (1) because the arbitrator did not consult a transcript of the arbitration proceedings;[16] (2) because Werline admitted many facts which allegedly contradict his legal position; and (3) the arbitrator made several conclusions unsupported by the evidence. East Texas contends the trial court did not abuse its discretion in vacating the award.

Werline did concede the truth of certain facts and information that was damaging to his position. He conceded that evaluations of special projects were a part of his prior duties as operations manager and that not all of his duties in that position were removed. He admitted the duties normally associated with the operations manager position would change over time. He agreed it was appropriate for East Texas to modify his duties from time to time. He admitted he was the one who requested a title change when he was as-

signed to investigate new business opportunities full time. He admitted that performing temporary assignments outside of operations management would not have created a problem under his contract. These admissions, however, do not preclude a fact-finder from finding Werline was no longer responsible for the duties normally associated with the position of operations manager.

■■■ East Texas directs our attention to several conclusions by the arbitrator which it alleges are not supported by the evidence. Only one of the conclusions complained of, however, is not supported by direct evidence. The arbitrator found that Adams (the former president of East Texas) lost his job due to lack of knowledge of operations. Although the arbitrator's conclusion is a reasonable inference, there is no direct evidence that Adams lost his job for this reason. While the arbitrator's conclusion in this regard is not supported by direct evidence, the finding is not significant to the ultimate determination that East Texas committed a material breach of the contract. One erroneous finding—if it was erroneous—does not demonstrate such a gross mistake as to demonstrate bad faith.

East Texas alleges there is no evidence to support other conclusions made by the arbitrator. It contends there is no evidence to support the following conclusion:

The operations duties changed over time since there was a reduction of the number of hourly people from 60 to 24

---

15. Werline alleges these attempts were made because the alternative lines of business being investigated by Werline were not "going to go anywhere." Clements testified he made the offers, merely as a friend, since he could see Werline was not pleased with the new arrangement.

16. Other than unsworn statements made by counsel for East Texas, the record does not reflect that the arbitrator refused to consult the transcript of the arbitration. But, even if counsel's statements qualify as evidence, this fact is irrelevant since the arbitrator presided over the arbitration and, according to the record, took forty pages of notes.

during Werline's tenure. Werline had instituted efficiencies and cross-trained employees thereby reducing the personnel requirements. Werline was so successful in cross-training other employees that he commented on more than one occasion that he had worked himself out of a job.

East Texas argues, without citation to the record, that this conclusion is not supported by the evidence because "[t]he testimony concerning cross-training concerned the Company's policy, for its own benefit, and showed that employees should expect that job duties would be fluid, depending on the Company's needs." This argument is not inconsistent with the arbitrator's finding. In addition, the record contains testimony that employees were cross-trained by Werline, and Adams testified Werline used to say he had "worked himself out of a job." There is more than a scintilla of evidence to support the arbitrator's conclusion.

East Texas also contends the arbitrator erred in concluding "Werline wanted to be with a stable company where he could retire and was concerned he had made a bad decision." In support, East Texas says the contract did not promise employment beyond its initial term and directs us to Werline's testimony that he did not believe the board in place as of 2003 would give him a new contract. East Texas' argument misinterprets the arbitrator's conclusion. East Texas' interpretation requires the assumption that Werline made the decision in 2003 to be with a stable company where he could retire. It can be reasonably inferred from the arbitrator's conclusion that the decision was made when Werline went to work for East Texas in 1996. Werline testified he went to work for East Texas with the intent to remain employed there until retirement. Under this reasonable inference, the arbitrator's

conclusion is supported by more than a scintilla of evidence.

East Texas further contends the arbitrator ignored the fact that Werline retained at least one important duty and that the duties of operations manager changed over time. East Texas also claims the arbitrator erred in concluding "[t]he agreement ... specifically provides that Werline would be responsible for those duties normally associated with the position of Operations Manager, which was not happening." As discussed above, the evidence established Werline was no longer in charge of field operations, an ongoing union grievance, and other duties. Key operational personnel were informed to report to Clements instead of Werline. There is evidence to support the arbitrator's conclusion.

According to East Texas, the arbitrator erred in concluding Clements "was doing whatever was necessary to preserve his job by becoming more involved in operations and moving Werline out of operations to the new business duties" and "it can be demeaning to be assigned ... duties which have no future." Clements testified Adams had been criticized for not being knowledgeable about operations. In its discussion of why the arbitrator erred, East Texas fails to provide record citations to contrary testimony and merely repeats its argument that, as long as Werline was focused on at least one of his former duties, the change was not unreasonable. At a minimum, the arbitrator's conclusions are reasonable deductions from the evidence.

Last, East Texas contends the arbitrator erred in concluding "[Adams] recommended the termination of Werline and others to the board if ETSWD was going to cut personnel to the bare bone." Adams testified he recommended to the board to terminate Werline. There is

some evidence to support the arbitrator's finding.

In essence, East Texas' contention is that, because the change in Werline's duties was a reasonable business practice, it was not a material breach of the contract. However, the reasonable policy provision cannot be allowed to completely rewrite the contract. Such an interpretation would render the rest of the contract provisions meaningless and would be contrary to the basic rules of contract interpretation. Even a reasonable business practice, under certain circumstances, can be a material breach of a contract.

In the final judgment, the trial court exceeded the narrow scope of review by substituting its own factual determinations for those of the arbitrator. The party seeking to vacate an arbitration award has the burden of demonstrating how the arbitrator made a gross mistake. *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 267 (Tex.App.-Houston [14th Dist.] 1995, no writ). The trial court's role is not to reevaluate the evidence, but rather merely to determine if the arbitrator acted in bad faith or failed to exercise honest judgment. An arbitrator's judgment has the same effect as a judgment of a court of last resort; a trial court cannot substitute its judgment for that of the arbitrator's. *Jamison & Harris v. Nat'l Loan Investors*, 939 S.W.2d 735, 737 (Tex.App.-Houston [14th Dist.] 1997, writ denied). Every reasonable presumption must be indulged to uphold the arbitration proceeding. *Antone's Import Co.*, 927 S.W.2d at 33.

There is more than a scintilla of evidence to support the arbitrator's conclusion that East Texas materially breached the contract. A reasonable person could have concluded from the evidence that Werline was no longer responsible for the duties normally associated with the position of operations manager. As noted above, the contract does provide that the duties are subject to reasonable policies and guidelines of the board of directors. However, the reasonable policies provision cannot be interpreted to supersede the explicit language of the contract providing that Werline will be the operations manager.

The trial court further erred in concluding the arbitrator committed a gross mistake. The question before the trial court was not whether the arbitrator reached the correct conclusion, but merely whether the arbitrator erred so egregiously that bad faith can be inferred. The arbitrator's conclusion that the board of directors' action was a material breach of the agreement is clearly not so erroneous as to indicate bad faith or a failure to exercise honest judgment.

CONCLUSION

We conclude, based on the plain language of the TAA, that we have jurisdiction to entertain this interlocutory appeal and that the trial court erred in denying Werline's application to confirm the arbitrator's award. Even if the trial court could review the award for legal sufficiency, there is more than a scintilla of evidence that East Texas materially breached the contract. The arbitrator did not err so egregiously as to imply bad faith or a failure to exercise honest judgment; neither can we say the arbitrator's decision was arbitrary or capricious.

We reverse the trial court's judgment and render judgment confirming the arbitrator's award.