ACCEPTED
14-15-00610-cv
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/8/2015 10:48:02 AM
CHRISTOPHER PRINE
CLERK

No. 14-15-00610-CV

_____

**IN THE COURT OF APPEALS FOR THE
FOURTEENTH JUDICIAL DISTRICT OF TEXAS AT HOUSTON**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/8/2015 10:48:02 AM
CHRISTOPHER A. PRINE
Clerk

_____

SOUTHWINDS EXPRESS CONSTRUCTION, LLC
*Appellant*

v.

D.H. GRIFFIN OF TEXAS, INC.
*Appellee*

_____

On appeal from the 151st District Court, Harris County, Texas
Cause No. 2015-22736

_____

**BRIEF OF APPELLEE. D.H. GRIFFIN OF TEXAS, INC.**

_____

**LAPIN & LANDA, LLP**

Robert E. Lapin
State Bar No. 11945050
500 Jefferson, Suite 2000
Houston, TX 77002
Office: (713) 756-3232
Fax: (713) 654-8704
Email: blapin@lapinlanda.com

**LAW OFFICE OF DON TOMLINSON**
Don Tomlinson
State Bar No. 24039507
8 Loggerhead
Hitchcock, TX 77563
Office: (832) 444-4848
Email: don@dontomlinsonlaw.com

No. 14-15-00610-CV
_____

IN THE COURT OF APPEALS FOR THE
FOURTEENTH JUDICIAL DISTRICT OF TEXAS
AT HOUSTON
_____

SOUTHWINDS EXPRESS CONSTRUCTION, LLC
*Appellant*

v.

D.H. GRIFFIN OF TEXAS, INC.
*Appellee*
_____

On appeal from the 151ˢᵗ District Court, Harris County, Texas
Cause No. 2015-22736
_____

BRIEF OF APPELLEE. D.H. GRIFFIN OF TEXAS, INC.
_____

IDENTITIES OF PARTIES AND COUNSEL

In accordance with Texas Rule of Appellate Procedure 38.2(a)(1)(A),

Appellee certifies that following is a complete list of all parties to this appeal:

APPELLANT:                        SOUTHWINDS EXPRESS CONSTRUCTION, LLC

**Counsel for Appellant**
**Appeal/Trial Court:**           Robert J. Killeen, Jr.
                                  Email: rkilleen@killeen-law.com
                                  Robert C. Stern
                                  Email: rstern@killeen-law.com
                                  Gerald M. "Tracy" Johnson, III
                                  Email: tjohnson@killeen-law.com
                                  Killeen & Stern, P.C.

ii

1811 Bering Drive, Suite 120
Houston, TX 77057
Office: 713.626.5100
Fax: 713.626.4545

**Appellee:**                         D.H. Griffin of Texas, Inc.

**Counsel for Appellee**
**Appeal/Trial Court:**       Robert E. Lapin
Email: blapin@lapinlanda.com
Lapin & Landa, LLP
500 Jefferson, Suite 2000
Houston, TX 77002
Office: 713.756.3232
Fax: 713.654.8704

Don Tomlinson
Email: don@dontomlinsonlaw.com
Law Office of Don Tomlinson
8 Loggerhead
Hitchcock, TX 77563
Office: 832.444.4848

**Trial Judge:**            Hon. Michael Engelhart
Presiding Judge
151st Judicial District Court
Harris County
201 Caroline, 11th Floor
Houston, TX 77002

# TABLE OF CONTENTS

Identities of Parties and Counsel ................................................................. ii

Table of Contents ..................................................................................... iv

Index of Authorities ................................................................................. vi

Statement of the Case ............................................................................... 1

Statement on Oral Argument ..................................................................... 3

Reply to Issues Presented .......................................................................... 3

Statement of Facts .................................................................................... 4

Summary of Argument .............................................................................. 13

Reply Point One (In response to Issue 1) ................................................... 15

The trial court did not err in determining the dispute between the parties was subject to arbitration because the parties' oral agreement to expand the Subcontractor Agreement's scope of work to include C&D haul-off constituted an oral modification of the Subcontractor Agreement and therefore fell within the scope of that agreement's claims resolution clause which required resolution of disputes by binding arbitration. The parties agreed to submit their dispute to binding arbitration under the AAA's rules without limit as to scope of issues to be arbitrated. Thus, the trial court correctly deferred to the Arbitrator's findings. Moreover, mediation was not a condition precedent to arbitration.

Arguments and Authorities ................................................................. 16

The Oral Agreement Modified The Subcontractor Agreement ................. 16

Mediation as a Condition Precedent to Arbitration................................. 21

Reply Point Two (In response to Issue 2) .............................................................. 25

The trial court did not err in applying the statutory grounds for vacatur set forth in §171.088 of the Texas Civil Practice & Remedies Code when it denied Southwinds' motion to vacate the Arbitrator's Award because Southwinds failed to meet its statutory burden of demonstrating that there was no valid agreement to arbitrate the dispute in question.

Arguments and Authorities ………………………………………….…26

Reply Point Three (In response to Issue 3) ........................................................... 28

The Arbitrator's Award is not tainted by a disregard for the law or by a gross mistake in applying the law.

Arguments and Authorities ………………………………………….…28

Conclusion and Prayer ...................................................................................... 31

Certificate of Service ......................................................................................... 32

Certificate of Compliance ................................................................................. 33

# INDEX OF AUTHORITIES

## **CASES**

*Am. Garment Props., Inc. v. CB Richard Ellis-El Paso, L.L.C.*, 155 S.W.3d 431 (Tex.App.—El Paso 2004, no pet.) ................................................................ 17

*Aspri Investments, LLC v. AFEEF and ENM Food Mart, Inc.,* No. 04-07-00249-CV, 2011 Tex. App. LEXIS 7082 (Tex.App.—San Antonio August 31, 2011, pet. dism'd) (*mem. op.*) .................................................................. 20, 27

*Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Trust,* 249 S.W.3d 34 (Tex. App.—Houston [1st Dist.] ................................................. 19, 20

*Centex/Vestal v. Friendship W. Baptist Church,* 314 S.W.3d 677 (Tex. App.—Dallas 2010, pet. denied) ............................................................ 20, 27, 30

*Churchill Forge, Inc. v. Brown,* 61 S.W.3d 368, 371 (Tex. 2001) ....................... 23

*City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 520 (Tex. App.--Houston [1st Dist.] 1994, writ denied) ................................................................ 26

*Crossmark, Inc. v. Hazar,* 124 S.W.3d 422 (Tex. App.—Dallas 2004, pet. denied) ............................................................................................................. 29

*CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex. 2002) .................... 20, 27

*Double Diamond, Inc. v. Hilco Electric Coop., Inc.*, 127 S.W.3d 260 (Tex. App.—Waco 2003, no pet.) .............................................................................. 17

*E. Tex. Salt Water Disposal Co. v. Werline,* 307 S.W.3d 267 (Tex. 2010) .......... 27

*Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653 (Tex. 2008) ...................................................................................................... 23, 24

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995) .......................... 20

*GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.,* 126 S.W.3d 257 (Tex. App.—San Antonio 2003 (pet. denied) ......................................................................... 27

*Grand Int'l Bhd. Of Locomotive Eng'rs v. Wilson*, 341 S.W.2d 206 (Tex. Civ. App.—Fort Worth 1960, writ ref'd n.r.e.) .................................................... 29

*Group Hosp. Servcs., Inc. v. One and Two Brookriver Center*, 704 S.W.2d 886 (Tex.Civ.App.—Dallas 1986, no writ) ........................................................ 18

*Haddock v. Quinn,* 287 S.W.3d 158 (Tex.App.—Ft. Worth 2009) ...................... 20

*Home Owners Mgmt. Enters., Inc. v. Dean,* 230 S.W.3d 766 (Tex. App.—Dallas 2007, no pet.) ................................................................................. 29

*Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002) ............................... 19

*Humitech Dev. Corp. v. Perlman,* 424 S.W.3d 782 (Tex.App.—Dallas 2014, no pet.) .......................................................................................................... 29

*Hyatt Cheek Builders-Engineers v. Board of Regents of the Univ. of Texas System*, 607 S.W.2d 258 (Tex.Civ.App.—Texarkana, 1980, writ dism'd) .......... 18

*In re Mabry,* 355 S.W.3d 16, 29 (Tex. App.—Houston [1st Dist.] 2010, *orig. proceeding [mand. denied]*) ............................................................................ 24

*In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 128-29 (Tex. 2004) ............. 23

*Int'l Bank of Commerce v. Int'l Energy Dev. Corp.,* 981 S.W.2d 38 (Tex. App.—Corpus Christi 1998, pet. denied) ........................................................ 30

*J.J. Gregory Gourmet Servs., Inc. v. Anton's Imp. Co.,* 927 S.W.2d 31 (Tex. App.—Houston [1st Dist.] 1995, no writ) ........................................................ 29

*Lawrence v. CDB Servs., Inc.,* 44 S.W.3d at 544 (Tex. 2001) ....................... 23, 24

*Lone Star Steel Co. v. Scott*, 759 S.W.2d 144 (Tex.Civ.App.—Texarkana, 1988, writ denied) ........................................................................................... 18

*Mann Frankfurt Stein & Lipp Advisers, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009) .......................................................................................................... 22

*Mar-Lan Industries, Inc. v. Nelson*, 635 S.W.2d 853 (Tex. App. —El Paso 1982, no writ) ....................................................................................................... 17

*Marsh USA v. Cook*, 354 S.W.3d 764 (Tex. 2011) .......................................... 23, 24

*Myer v. Americo Life, Inc.,* 232 S.W.3d 401 (Tex.App.—Dallas 2007) .............. 29

*Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 89-90 (Tex. 2011) ....................... 26

*Pheng Inv., Inc. v. Rodriquez*, 196 S.W.3d 322 (Tex. App.—Fort Worth 2006, no pet.) ................................................................................. 28, 30

*Printing & Numerical Registering Co. v. Sampson,* LR 19 Eq 462, 465, 874 WL 16322 (1875) ............................................................................ 24

*Roe v. Ladymon,* 318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.) ............... 20

*Royston, Rayzor, Vickery & Williams, L.L.P. v. Lopez,* 467 S.W.3d 494 (Tex. 2015) ...................................................................................... 22, 23

*Sacks v. Dallas Gold & Silver Exch., Inc.,* 720 S.W.2d 177, 180 (Tex.App.—Dallas 1986, no writ) ....................................................... 24

*South Hampton Co. v. Stinnes Corp*., 733 F.2d 1108 (5th Cir. 1984) ................. 17

*Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) .......................................... 30

*Teleometrics Int'l, Inc. v. Hall,* 922 S.W.2d 189 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ................................................................... 30

*Triton 88 v. Star Electric, L.L.C.*, 411 S.W.3d 42 (Tex. App. —Houston (1st Dist.) 2013, no pet.) .................................................................... 17

*Universal Computer Sys., Inc. v. Dealer Solutions, L.L.C.,* 183 S.W.3d 741 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ........................................... 30

*Werline v. E. Tex. Salt Water Disposal Co.,* 209 S.W.3d 888 (Tex. App.—Texarkana 2006), *aff'd,* 307 S.W.3d 267 (Tex. 2010) .................................... 28, 30

*Wood Motor Co. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 185 (1951) ......... 23, 24

*Xtria L.L.C. v. Int'l Ins. Alliance Inc.,* 286 S.W.3d 583 (Tex. App.—
Texarkana 2009, pet. denied) ................................................ 27, 28, 29, 30

## TEXAS CONSTITUTION

Tex. Const. art. I, § 16 ...................................................................... 23

## TEXAS STATUTES

Tex. Civ. Prac. & Rem. Code Ann. § 154.002 ..................................... 25

Tex. Civ. Prac. & Rem. Code § 171.087 .............................................. 26

Tex. Civ. Prac. & Rem. Code Ann., Title 7 .......................................... 24

Tex. Fam. Code Ann. §§ 6.601–6.604 ................................................. 24

## AAA RULES

American Arbitration Association Rule of Commercial Arbitration, R-7 .......... 19

## RECORD REFERENCES

Clerk's Record            CR[Vol.#]:[Page#]

No. 14-15-00610-CV
_____

IN THE COURT OF APPEALS FOR THE
FOURTEENTH JUDICIAL DISTRICT OF TEXAS AT HOUSTON
_____

SOUTHWINDS EXPRESS CONSTRUCTION, LLC
*Appellant*

v.

D.H. GRIFFIN OF TEXAS, INC.
*Appellee*
_____

**BRIEF OF APPELLEE. D.H. GRIFFIN OF TEXAS, INC.**
_____

TO THE HONORABLE FOURTEENTH COURT OF APPEALS:

Appellee, D.H. Griffin of Texas, Inc., respectfully submits this brief in response to the brief filed by Appellant. Appellant, Southwinds Express Construction, appeals from the entry of a Final Order Confirming Arbitration Award entered by the 151st Judicial District Court, Honorable Michael Engelhart, Judge Presiding. Appellee respectfully requests that this Court affirm the entry of the Final Order Confirming Arbitration Award by the trial court.

## STATEMENT OF THE CASE

Pursuant to the terms of a Subcontractor Agreement (CR1:36-47) executed between Appellee D.H. Griffin of Texas, Inc. ("Griffin") and Appellant Southwinds Express Construction, LLC ("Southwinds"), Griffin initiated an

1

arbitration proceeding (CR1:26-31) against Southwinds seeking damages and equitable relief after Southwinds walked off the job of a new construction, renovation, and demolition project prior to completing its scope of work. During the arbitration proceeding, Southwinds twice objected to the jurisdiction of the American Arbitration Association ("AAA") to administer Griffin's claims (CR1:32-33). On both occasions, the Arbitrator rejected Southwinds' objections and, following a two-day final arbitration hearing, issued an Award of Arbitration ("the Arbitrator's Award") (CR1:8-12) in favor of Griffin and against Southwinds, expressly overruling Southwinds' objection to AAA's jurisdiction and granting Griffin monetary and equitable relief. After Southwinds failed to abide by the Arbitrator's Award, Griffin initiated an action in the 151st District Court, Harris County, Texas to have the Arbitrator's Award confirmed (CR1:4-12). Southwinds objected to confirmation of the award and filed pleadings asserting the identical lack of jurisdiction arguments and asking the trial court to vacate the Arbitrator's Award (CR1:15-23). The trial court requested additional briefing from Griffin (CR1:76) and, after consideration of both parties' briefing and arguments, entered a final order confirming the Arbitrator's Award (CR1:110-111). Southwinds appeals from the entry of that final order.

## STATEMENT ON ORAL ARGUMENT

Appellant requested oral argument. Appellee maintains oral argument is not likely to add materially to the information before the Court, but, out of an abundance of caution and to avoid waiver, requests the right to participate in any oral argument that may be scheduled by the Court.

## REPLY TO ISSUES PRESENTED

### REPLY POINT ONE

In response to Issue 1.

The trial court did not err in determining the dispute between the parties was subject to arbitration because the parties' oral agreement to expand the Subcontractor Agreement's scope of work to include C&D haul-off constituted an oral modification of the Subcontractor Agreement and therefore fell within the scope of that agreement's claims resolution clause which required resolution of disputes by binding arbitration. The parties agreed to submit their dispute to binding arbitration under the AAA's rules without limit as to scope of issues to be arbitrated. Thus, the trial court correctly deferred to the Arbitrator's findings. Moreover, mediation was not a condition precedent to arbitration.

### REPLY POINT TWO

In response to Issue 2.

The trial court did not err in applying the statutory grounds for vacatur set forth in §171.088 of the Texas Civil Practice & Remedies Code when it denied Southwinds' motion to vacate the Arbitrator's Award because Southwinds failed to meet its statutory burden of demonstrating that there was no valid agreement to arbitrate the dispute in question.

3

In response to Issue 3.

The Arbitrator's Award is not tainted by a disregard for the law or by a gross mistake in applying the law.

## STATEMENT OF FACTS

Appellee D.H. Griffin of Texas, Inc. ("Griffin") is a demolition contractor headquartered in Houston, Texas, since the 1990s. On occasion, Griffin is a subcontractor for a general contractor (usually when the overall project includes new construction and renovation as well as demolition).

In 2013, the Lemoine Company ("Lemoine"), a construction company/general contractor headquartered in Lafayette, Louisiana, hired Griffin to serve as the demolition subcontractor for a new construction, renovation, and demolition project ("the Project") on the grounds of Our Lady of Lourdes Hospital ("the Owner") in Lafayette (CR1:27).

At Griffin's request, Appellant Southwinds Express Construction, LLC ("Southwinds") submitted a bid for removing debris and other material from the demolition site of the Project (CR1:86). Southwinds' bid was for concrete excavation and haul-off, brick haul-off, and construction and demolition ("C&D") haul-off. Griffin accepted Southwinds' terms for the concrete haul-off and the brick haul-off but was unwilling to accept Southwinds' proposed price terms ($12/cubic yard) for the C&D haul-off. So, on September 26, 2013, Griffin and

4

Southwinds entered into a Subcontractor Agreement whose scope of work encompassed only the concrete haul-off and brick haul-off (CR1:36-47). However, the scope of work agreed to between the parties (memorialized in Ex. A to the Subcontractor Agreement) expressly referenced Southwinds' original proposal for the C&D haul-off.

Over the course of the ensuing two weeks, the Griffin and Southwinds reached agreement on the price Griffin would agree to pay Southwinds for C&D haul-off ($9/cubic yard) and, on October 9, 2013, reached an oral agreement to expand Southwinds' scope of work for the Project to include C&D haul-off for that price (CR1:8-10). As clear evidence of the material terms of this agreement, the very next day, Southwinds hauled and dumped 50 yards of C&D and invoiced Griffin for the same at $9/cubic yard (CR1:10).

Five days later, Griffin attempted to reduce this agreement to writing by sending Southwinds two unexecuted originals of a proposed new Subcontractor Agreement whose only change from the existing Subcontractor Agreement was the expansion of the scope of work to include C&D haul-off for $9/cubic yard (CR1:9, 48-59). Southwinds sought to unilaterally change the payment terms of the proposed new Subcontractor Agreement by interlineating "Payment terms will be Net 14" into the agreement and then privately executed the proposed second Subcontractor Agreement and chose not to return it to Griffin (CR1:9).

Southwinds' unilateral, private interlineation represented a material change to the payment terms because the Subcontractor Agreement contained "pay when paid" payment terms providing that Griffin's obligation to pay Southwinds for its work did not arise until after Griffin had first been paid by Lemoine for Southwinds' work (CR1:43).

In the absence of a replacement written agreement, the agreement between the parties whereby Southwinds' scope of work expanded to include C&D haul-off for $9/cubic yard became an oral modification of the existing Subcontractor Agreement best evidenced by the parties' subsequent course of dealing whereby, throughout October, November and December of 2013, Southwinds hauled and dumped C&D, invoiced Griffin at the price of $9/cubic yard, and was paid by Griffin at that rate pursuant to the "pay when paid" terms of the Subcontractor Agreement. – all of which transpired without an iota of complaint from Southwinds (CR1:8-10).

The all-inclusive price which Griffin paid Southwinds for C&D haul-off included the cost of disposal of that debris at a local landfill. However, unbeknownst and without any notice to Griffin, in December of 2013, Southwinds stopped paying the landfill for disposal of loads of construction debris dating back to mid-November and had sent the landfill a check which had bounced (CR1:10). In response, the landfill owner understandably refused to allow Southwinds to

6

bring any more construction debris for disposal there. Without a landfill available for disposal of the debris, Southwinds ceased work on the Project (CR1:10).

In mid-January, 2014, Griffin learned that Southwinds had ceased work and had abandoned the job before completing the scope of its work for the Project (CR1:10). At the same time, Griffin was notified by the landfill that Southwinds owed the landfill, in arrears, approximately $67,000.00 for debris from the Project which Southwinds had hauled to and deposited in the landfill (CR1:10). The landfill demanded payment from Griffin and threatened to place a lien on the Owner's property if Southwinds' payment obligation to the landfill remained unpaid (CR1:10).

When Griffin contacted Southwinds to investigate why Southwinds had refused to fulfill its payment obligations to the landfill owner, Southwinds deflected the conversation from its nonpayment of its obligations to the landfill and instead suggested that Griffin was behind in its payment of Southwinds' invoices to Griffin. Such a suggestion was without merit because Southwinds knew that Griffin was not obligated to pay Southwinds until Griffin had been paid by Lemoine and Griffin had, to that date, timely paid Southwinds for all invoices for which Griffin had been paid by Lemoine.

On February 6, 2014, Southwinds confirmed to Griffin that it would not return to the jobsite and complete its work on the Project. The next day, Griffin's

lawyer sent Southwinds a letter advising Southwinds that, pursuant to its rights under the Subcontractor Agreement: (1) Griffin would pay the unpaid landfill bill from funds which would otherwise have been due Southwinds, (2) Griffin would withhold future sums paid by Lemoine for work completed by Southwinds to cover whatever expenses Griffin would incur to complete the work which Southwinds was refusing to perform, and (3) Griffin reserved the right to pursue Southwinds for any and all other expenses to be incurred by Griffin as a result of Southwinds having walked off of the job.

In response, Southwinds had its lawyer file a lien on the job project, notify the Owner of its lien and, *for the first time*, sent Griffin's lawyer the unsigned copy of the proposed revised Subcontractor Agreement which Griffin had sent unsigned to Southwinds back in October and onto which Southwinds' subsequently and unilaterally imposed handwritten interlineations seeking to add a "net 14 days" payment term to the agreement. Griffin had never signed and, upon receipt, expressly rejected that agreement as constituting any sort of enforceable second agreement. That is why Southwinds' assertion in its Statement of Facts in Appellant Brief (p. 5) that there was a second "…Subcontractor Agreement dated October 14, 2013…." is patently untrue and was soundly rejected by both the Arbitrator and the trial court.

Thereafter, Griffin paid off the landfill bill which Southwinds had refused to pay, hired and paid third-parties to complete the work which Southwinds had refused to perform, and initiated an arbitration against Southwinds with the American Arbitration Association ("the AAA") to recover all damages to which Griffin was entitled under the Subcontractor Agreement (CR1:25-31). The Subcontractor Agreement contained a claims resolution provision (CR1:37) which provided for mediation unless, in Griffin's sole discretion, Griffin believed mediation would be a useless exercise, in which case Griffin had the right to directly proceed to initiate binding arbitration. Griffin concluded that Southwinds had no interest being held accountable for its conduct and even less interest in agreeing to compensate Griffin for the substantial damages it caused. Griffin had the unequivocal right to skip mediation and properly exercised that right.

Here, Griffin wishes to point out to that Southwinds' Statement of Facts, which erroneously claims that the "facts" listed in its brief "are not disputed", posits as a "fact" in its Appellant's Brief (pages 4 and 5) that "Griffin acknowledged that at the time it instituted the arbitration proceeding, it owed Southwinds $94,531.00". Such a statement is entirely untrue. In point of fact, what Griffin acknowledged was that this amount would have been due Southwinds but for Southwinds having breached the Subcontractor Agreement by, among other thing, walking off the job prior to its completion and requiring Griffin to incur

9

substantial damages resulting therefrom in an amount well in excess of what Southwinds might have been due had it performed its obligations under the Subcontractor Agreement.

After Griffin initiated binding arbitration, Southwinds sought to evade accountability in arbitration by objecting to the jurisdiction of the AAA to administer Griffin's claims (CR1:32-35), even though the Subcontractor Agreement clearly made any such dispute subject to the AAA's Construction Industry Arbitration Rules (CR1:37).

Southwinds has never disputed that it willingly executed the Subcontractor Agreement and that the agreement contained a valid and enforceable claim resolution provision which provided for binding arbitration of unresolved claims between the parties. Nor has Southwinds ever disputed that, on October 9, 2013, it orally agreed to perform C&D haul-off in return for a payment of $9/cubic yard, that it thereafter performed C&D haul-off for the next three months and invoiced Griffin at the rate of $9/cubic yard or that it subsequently abandoned the Project prior to completion of its scope of work.

Southwinds instead sought to avoid it liability for the damages it caused Griffin by abandoning the Project by arguing that Subcontractor Agreement's claims resolution clause does not reach Griffin's claim for damages arising out of Southwinds' conduct because Griffin's claims for damages arising from the C&D

10

haul-off portion of Southwinds' scope of work somehow fell outside of the reach of the Subcontractor Agreement's claims resolution clause. Thus, Southwinds claimed, the AAA did not have jurisdiction to hear these claims.

Griffin responded that Southwinds and Griffin's oral agreement to expand the Subcontractor Agreement's scope of work to include C&D haul-off constituted an oral modification of the Subcontractor Agreement (CR1:8-10). Therefore, C&D haul-off was governed by the Subcontractor Agreement and, consequently, resolution of Griffin's claims arising therefrom fell within the scope of the Subcontractor Agreement's claims resolution clause.

After both parties briefed this issue, the Arbitrator conducted a November 17, 2014 telephonic hearing on the subject and overruled Southwinds' objection to the AAA's jurisdiction over this matter but agreed to reconsider the issue at the final arbitration hearing if any new facts presented themselves to call her ruling into question.

At the two-day final arbitration hearing on January 29-30, 2015, both parties exercised the opportunity to fully brief and present evidence on this issue. Southwinds also argued that mediation was a condition precedent to arbitration pursuant to the Subcontractor Agreement, to which Griffin responded that the Subcontractor Agreement gave Griffin the clear right to escalate the dispute directly to arbitration.

11

After hearing the evidence and considering the parties' legal arguments, the Arbitrator issued a March 12, 2015 Award of Arbitration ("the Arbitrator's Award") (CR1:8-12) in favor of Griffin and against Southwinds on each of these issues, expressly overruling Southwinds' objection to AAA's jurisdiction and granting Griffin monetary and equitable relief.

Because Southwinds would not respond post-arbitration to multiple queries as to when Griffin would be paid, Griffin initiated an action in the 151st District Court, Harris County, Texas to have the Arbitrator's Award confirmed (CR1:4-12). Southwinds objected to confirmation of the award and filed pleadings asserting the identical lack of jurisdiction and mediation arguments and asking the trial court to vacate the Arbitrator's Award (CR1:15-23). After careful consideration of the parties' extensive briefing and arguments, on June 16, 2015, the trial court entered its final order confirming the Arbitrator's Award (CR1:110-111), ruling on the merits of the identical arguments which Southwinds has re-asserted in this appeal and expressly finding:

> The Court is persuaded that the agreement between the parties contemplated additional potential work such as the C&D work. Thus, this work arose out of the agreement and, consequently, the arbitration agreement contemplated additional work. Further, the issue of whether there was, in fact, an enforceable oral agreement to do the C&D work was for the arbitrator to decide, not this Court. The Court will note, though, that the agreement between the parties does NOT (emphasis in original) state that no subsequent agreements could be formed; only that no oral representations prior to the written agreement existed or were relied on. Finally, this Court is not

12

persuaded that the mediation clause was a condition precedent to arbitration."

Southwinds appeals from the entry of that final order.

## SUMMARY OF ARGUMENT

When distilled to its essence, Southwinds makes but one argument with two facets. The argument is arbitrability. The facets are that the subject matter arbitrated did not fall under the arbitration provision of the Subcontractor Agreement and that mediation was a condition precedent to arbitration. Southwinds makes these same arguments in all three issues. For the reasons stated herein, each of Southwinds' arguments fail.

On two occasions, the Arbitrator ruled against Southwinds' jurisdiction argument – pre-hearing and then in the final arbitration itself. The basis for the Arbitrator's decision was that the parties' agreement on the terms of the C&D haul-off constituted an oral modification of the Subcontractor Agreement, thereby bringing the dispute over C&D haul-off within the scope of the Subcontractor Agreement's dispute resolution clause which provided for arbitration. After the subsequent filing of briefs on this issue by the parties in the trial court, the court ruled, correctly:

> …that the agreement between the parties contemplated additional potential work such as the C&D work. Thus, this work arose out of the agreement and, consequently, the arbitration agreement contemplated additional work. Further, the issue of whether there was, in fact, an enforceable oral agreement to do the C&D work was for the

13

arbitrator to decide, not this Court. The Court will note, though, that the agreement between the parties does NOT (*emphasis in original*) state that no subsequent agreements could be formed; only that no oral representations prior to the written agreement existed or were relied on.

The Arbitrator also ruled that mediation was not a condition precedent to arbitrating the matter because of the plain language of the Subcontractor Agreement, to wit:

> In the event that a claim is not resolved through the negotiations of the parties, claim resolution will be resolved through mediation unless, in the sole discretion of [Griffin], [Griffin] believes mediation would be a useless exercise in which case [Griffin], unilaterally, may escalate the claims process to binding arbitration at any time" (Subcontractor Agreement, p. 2, paragraph 3).

The Arbitrator properly found that, pursuant to this contractual language, mediation was not a condition precedent to the valid filing of an arbitration claim by Griffin without first having resorted to mediation. After the filing of briefs by the parties on this subject in the trial court, the court ruled, appropriately: "…this Court is not persuaded that the mediation clause was a condition precedent to arbitration."

Additionally, the trial court appropriately applied the statutory grounds for vacatur set forth in §171.088 of the Texas Civil Practice & Remedies Code when it denied Southwinds' motion to vacate the Arbitrator's Award. As is discussed herein, Southwinds failed to meet its statutory burden of demonstrating that there was no valid agreement to arbitrate the dispute in question. The trial court

14

therefore correctly applied §171.088 when it denied Southwinds' request for vacatur.

Lastly, Southwinds has not established that the Arbitrator's Award is in any way tainted by a disregard for the law or by a gross mistake in applying the law. Here, Southwinds simply restates its flawed argument on the arbitrability of this dispute and asserts that, because the Arbitrator rejected the argument and ruled against Southwinds, that ruling must necessarily constitute manifest disregard and gross error. Such an assertion is not only contrary to the law, it ignores the very telling fact that Southwinds voluntarily and willingly agreed in the Subcontractor Agreement to subject itself to arbitration under the AAA's rules and to allow an arbitrator to rule on those very subjects. The trial court properly agreed and correctly rejected Southwinds' suggestion that the Arbitrator's Award was in any way tainted by a disregard for the law or by a gross mistake in applying the law.

## **REPLY POINT ONE**

In response to Issue 1.

The trial court did not err in determining the dispute between the parties was subject to arbitration because the parties' oral agreement to expand the Subcontractor Agreement's scope of work to include C&D haul-off constituted an oral modification of the Subcontractor Agreement and therefore fell within the scope of that agreement's claims resolution clause which required resolution of disputes by binding arbitration. The parties agreed to submit their dispute to binding arbitration under the AAA's rules without limit as to scope of issues to be arbitrated. Thus, the trial court correctly deferred to the Arbitrator's findings. Moreover, mediation was not a condition precedent to arbitration.

## ARGUMENTS AND AUTHORITIES

In its brief, Southwinds argues that the parties' oral agreement to include C&D haul-off within the scope of Southwinds' work for the Project fell outside the reach of the Subcontractor Agreement's dispute resolution clause and that, as a consequence, the Arbitrator had no jurisdiction to hear Griffin's claims arising from Southwinds' breach of that agreement and the trial court erred in confirming an award the Arbitrator had no jurisdiction to make. Southwinds also argues that both the Arbitrator and the trial court lacked jurisdiction to hear the dispute because mediation was a condition precedent to arbitration.

For the reasons detailed herein, both of Southwinds' jurisdictional arguments should be soundly rejected.

### The Oral Agreement Modified The Subcontractor Agreement

On October 9, 2013, Southwinds and Griffin orally agreed to expand the Subcontractor Agreement's Scope of Work to include C&D haul-off for $9 per cubic yard. That there was a clear meeting of the minds as to these material terms supported by new consideration is evidenced by: (i) the agreement reached between the parties, (ii) Southwinds' immediate commencement (on October 10, 2013) of C&D haul-off and invoicing Griffin $9 per cubic yard for each load, and (iii) the parties course of dealings throughout October, November and December of

16

2013 during which Southwinds hauled C&D, invoiced Griffin $9 per cubic yard, and was paid by Griffin at that rate.

The parties' October 9, 2013 oral agreement to expand Southwinds scope of work under the Subcontractor Agreement to include C&D haul-off for $9 per cubic yard therefore constituted a binding and enforceable oral modification of the September 26, 2013 Subcontractor Agreement.

In *Double Diamond, Inc. v. Hilco Electric Coop., Inc.*, 127 S.W.3d 260, 267 (Tex. App.—Waco 2003, no pet.), the Waco Court of Appeals confirmed longstanding Texas law when it held:

> A written agreement not required by law to be in writing may be modified by a later oral agreement, even though it provides that it can be modified only in writing.

See also *Mar-Lan Industries, Inc. v. Nelson*, 635 S.W.2d 853, 855 (Tex. App.—El Paso 1982, no writ). Accord, *Triton 88 v. Star Electric, L.L.C.*, 411 S.W.3d 42, 57 (Tex. App.—Houston (1st Dist.) 2013, no pet.); *Am. Garment Props., Inc. v. CB Richard Ellis-El Paso, L.L.C.*, 155 S.W.3d 431, 435 (Tex.App.—El Paso 2004, no pet.); see also *South Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1118 (5th Cir. 1984).

Texas courts have long recognized and enforced oral modifications even where the parties' agreement contains a no-oral-modification clause, reasoning that the written agreement is of no higher legal degree than an oral one, and either may

vary or discharge the other. *Id.*; see also *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 153 (Tex.Civ.App.—Texarkana, 1988, writ denied); *Group Hosp. Servcs., Inc. v. One and Two Brookriver Center*, 704 S.W.2d 886, 890 (Tex.Civ.App.—Dallas 1986, no writ); *Hyatt Cheek Builders-Engineers v. Board of Regents of the Univ. of Texas System*, 607 S.W.2d 258, 265 (Tex.Civ.App.—Texarkana, 1980, writ dism'd).

Here, no Texas law (*e.g.,* the statute of frauds) required the oral modification to be in writing. Hence, Griffin and Southwinds were perfectly free to modify their binding September 26, 2013 Subcontractor Agreement orally to expand the agreement's Scope of Work to include the C&D haul-off and that is precisely what they did when they agreed on or about October 9, 2013 that Southwinds would haul C&D for $9 per cubic yard.

Because the binding and enforceable oral modification modified the Subcontractor Agreement and because the Subcontractor Agreement contained a dispute resolution clause permitting either party to invoke binding arbitration, the oral modification, then being a part of the Subcontractor Agreement as though written in the agreement *ab initio*, was subject to the arbitration provision. Thus, when Southwinds walked off the job and failed to complete the C&D haul-off, and when Griffin asserted its claim against Southwinds for breach of the Subcontractor Agreement, that claim (along with Griffin's additional claims) was subject to the

18

binding arbitration provision of the Subcontractor Agreement. That is precisely what the Arbitrator found in her Award of Arbitration (see pp. 2-3). The trial court affirmed that result and indicated that the decision on this subject was the province of the Arbitrator and not the trial court; this Court should reach precisely the same result.

On the subject of arbitrability, Texas law is clear. "The scope of the arbitration is a matter of substantive arbitrability for a court to decide unless the parties clearly agreed otherwise." See *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002); *Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In this case, parties agreed in paragraph 3 of the Subcontractor Agreement to subject any dispute to binding arbitration under the rules of the AAA's Construction Industry Dispute Resolution Procedures. Those very rules provide that the Arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association Rule of Commercial Arbitration, R-7. This explains why, rather than ask a court to decide the arbitrability issue, Southwinds raised its jurisdictional objection to the Arbitrator in the course of the arbitration proceeding in its pleadings, pre-hearing conference, and during the final arbitration hearing itself. The Arbitrator decided the issue, ruling at each

opportunity that C&D haul-off was arbitrable under the Subcontractor Agreement and that mediation was not a condition precedent to arbitration. The trial court, in turn, ruled that these findings, indeed, fell within the province of the Arbitrator and that mediation was not a precedent to arbitration.

In *Aspri Investments, LLC v. AFEEF and ENM Food Mart, Inc.,* No. 04-07-00249-CV, 2011 Tex. App. LEXIS 7082 (Tex.App.—San Antonio August 31, 2011, pet. dism'd) (*mem. op.*) the Court stated:

> Most courts have concluded that where the parties' agreement did not limit the issues to be arbitrated or the applicability of the AAA rules, incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator. *See Haddock,* 287 S.W.3d at 172-73 (discussing cases); *Burlington,* 249 S.W.3d at 40-42 (same). We conclude the parties agreed to submit arbitrability issues to the arbitrators. Because the arbitration panel had the primary power to decide the scope of arbitration, the court's standard for reviewing the panel's decision on that matter is the same as the standard used in reviewing the panel's decision on substantive matters. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995). That is, the trial court reviews the panel's determination with great deference, indulging all reasonable presumptions in favor of the panel's decision. *See CVN Group,* 95 S.W.3d at 238; *Roe v. Ladymon,* 318 S.W.3d 502, 511 (Tex. App.—Dallas 2010, no pet.). Any doubts concerning the scope of what is arbitrable should be resolved in favor of arbitration. *Centex/Vestal,* 314 S.W.3d at 684. … We conclude that Aspri has not shown grounds for the trial court to do anything other than defer to the arbitration panel's determinations about the scope of the arbitration, and we hold the trial court did not err in failing to vacate on the ground the arbitrators exceeded their powers.

The same result should follow here.

## Mediation as a Condition Precedent to Arbitration

In its brief, Southwinds argues that, notwithstanding its plain language, the dispute resolution clause in the Subcontractor Agreement required mediation to be a condition precedent to arbitration. As the Arbitrator ruled and as the trial court agreed, this is argument is devoid of legal basis or merit.

Southwinds suggests that the contractual dispute-resolution process required negotiation, followed by mediation, followed by arbitration (assuming no settlement). Not so. The dispute resolution process agreed to between the parties in paragraph 3 of the Subcontractor Agreement called for negotiation (which Griffin attempted on various occasions but which Southwinds absolutely and steadfastly rebuffed), followed by mediation *unless Griffin, at its sole discretion, decided to bypass mediation by escalating the dispute straight to arbitration*.

Paragraph 3 of the Subcontractor Agreement clearly and unambiguously provides:

> In the event that a claim is not resolved through the negotiations of the parties, claim resolution will be resolved through mediation, unless in the sole discretion of [Griffin], [Griffin] believes mediation would be a useless exercise in which case [Griffin], unilaterally, may escalate the claims process to binding arbitration at any time.

While this contract language in no way requires Griffin to justify why it decided to forego mediation and escalate the dispute directly to binding arbitration by filing an arbitration claim against Southwinds, Griffin notes here that, given the

21

chronology of events detailed at the arbitration, Griffin understandably concluded that Southwinds had no interest being held accountable for its conduct and even less interest in agreeing to compensate Griffin for the substantial damages it caused. Griffin had the unequivocal right to skip mediation and properly exercised that right.

The cases relied upon by Southwinds in support of its suggestion that this Court should brand the dispute resolution clause in the Subcontractor Agreement as illusory are inapplicable here.

In *Mann Frankfurt Stein & Lipp Advisers, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009), for example, the question was whether a promisor could unilaterally discontinue or change *performance*. The case concerned the enforceability of a covenant-not-to-compete and is far afield from this dispute. The dispute resolution clause in this case does not grant Griffin the right to change its performance of the Subcontractor Agreement, only to escalate from mediation to arbitration. Griffin was not discontinuing or changing anything. The Subcontractor Agreement gave Griffin the right to do exactly what it did.

Citing *Royston, Rayzor, Vickery & Williams, L.L.P. v. Lopez,* 467 S.W.3d 494 (Tex. 2015), Southwinds argues that the Supreme Court of Texas recently stated that an arbitration provision that permits one party to amend or change the agreed-upon procedure so as to avoid its obligations is illusory, but that is simply

22

not what happened in this case. Griffin had no right to change or to amend the agreed-upon procedure because the agreed-upon procedure plainly was spelled out in the dispute resolution clause itself; *i.e.*, it was agreed upon. By executing the Subcontractor Agreement, Southwinds agreed to the precise procedure which was followed: failed negotiation moving to mediation unless Griffin chose to move straight from negotiation to arbitration. There is nothing illusory or unenforceable about that. In *Royston,* the Court found that the arbitration provision in question was not illusory.

Freedom of contract is fundamental to the conduct of business in Texas. As the Supreme Court of Texas stated in *Marsh USA v. Cook*, 354 S.W.3d 764 (Tex. 2011): "The Texas Constitution protects the freedom to contract." *See* Tex. Const. art. I, §16; *Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 663–64 (Tex. 2008); *see also In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 128–29 (Tex. 2004).

In *Fairfield*, the Court stated: "This Court has long recognized Texas' strong public policy in favor of preserving the freedom of contract." Tex. Const. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."); *see also Churchill Forge, Inc. v. Brown,* 61 S.W.3d 368, 371 (Tex. 2001); *Lawrence,* 44 S.W.3d at 553 (citations omitted); *Wood Motor Co. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 185 (1951).

Sophisticated businesspersons, as here, have every right to enter into the contracts and contractual language of their choosing. On that subject, the *Fairfield* Court quoted law well-settled since at least 1875:

> [I]f there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. Therefore, you have this paramount public policy to consider — that you are not lightly to interfere with this freedom of contract. *Nebel,* 238 S.W.2d at 185 (quoting *Printing & Numerical Registering Co. v. Sampson,* LR 19 Eq 462, 465, 1874 WL 16322 (1875)).

Of course, as the *Marsh* Court also stated: "[T]he Legislature may impose reasonable restrictions on the freedom to contract consistent with public policy." *See Fairfield* at 664-65.

In *In re Mabry,* 355 S.W.3d 16, 29 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]), this Court stated: "[In various areas of the law], Texas public policy permits and encourages parties to enter into agreements to submit disputes to various forms of alternative dispute resolution." See, e.g., Tex. Fam. Code Ann. §§ 6.601–6.604; Tex. Civ. Prac. & Rem.Code Ann., Title 7. Texas public policy, this Court also stated, strongly favors "preserving the freedom to contract." *Lawrence,* 44 S.W.3d at 553. But "[t]he courts will not enforce a contract whose provisions are against public policy." *Sacks v. Dallas Gold & Silver Exch., Inc.,* 720 S.W.2d 177, 180 (Tex.App.-Dallas 1986, no writ).

24

This Court continued:

> We can see no reason why we should hold that cooperative law agreements violate public policy in Texas. Neither the collaborative law statute nor common law prohibit the practice of cooperative law in Texas, and [Mabry] has offered no persuasive evidence as to why cooperative law agreements cannot be negotiated by parties within Texas's generous ADR ambit. See Tex. Civ. Prac. & Rem.Code Ann. § 154.002.

Nothing in the Subcontractor Agreement, specifically including its dispute-resolution clause, is against or violates public policy and the Legislature has not seen fit so to say. Southwinds had every opportunity to negotiate changes to the dispute-resolution provision of the Subcontractor Agreement but engaged in absolutely no effort to do so; it must be so, therefore, that Southwinds was just as much in agreement with the exact language of the dispute-resolution provision as it was with any other provision in the Subcontractor Agreement.

As is set forth above, the parties agreed to abide by arbitration rules which let the Arbitrator decide the arbitrability issues. Beyond any doubt, the Arbitrator had the authority to decide arbitrability, the Arbitrator did so, the trial court upheld the Arbitrator's decisions with respect to arbitrability. Arbitrability was properly decided by the Arbitrator, affirmed by the trial court and should not be disturbed.

## **REPLY POINT TWO**

In response to Issue 2.

The trial court did not err in applying the statutory grounds for vacatur set forth in §171.088 of the Texas Civil Practice & Remedies Code when it denied

25

Southwinds' motion to vacate the Arbitrator's Award because Southwinds failed to meet its statutory burden of demonstrating that there was no valid agreement to arbitrate the dispute in question.

## ARGUMENTS AND AUTHORITIES

The Arbitrator's Award must be confirmed unless there are grounds for modifying, correcting or vacating the award. Texas Civil Practice & Remedies Code §171.087; *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 89-90 (Tex. 2011); *City of Baytown v. C.L. Winter, Inc*., 886 S.W.2d 515, 520 (Tex. App. - Houston [1st Dist.] 1994, writ denied).

Southwinds' brief argues that the trial court should have vacated the Arbitrator's Award in this case because there was no valid agreement to arbitrate the C&D haul-off claims.

Griffin incorporates herein the evidence, arguments and authorities detailed above in response to Issue No. 1 wherein Griffin demonstrated that there was indeed a valid and enforceable agreement between the parties to arbitrate the C&D haul-off claims. Therefore, the trial court did not err by failing to apply the §171.088 statutory grounds for vacating an arbitration award because Southwinds failed to meet its legal burden of demonstrating no valid agreement to arbitrate.

Southwinds also suggests that vacatur of the Arbitrator's Award was justified under §171.088(a)(3)(A) because the Arbitrator exceeded her powers by deciding matters outside the scope of her authority. Here, as the only basis for this

argument, Southwinds rehashes its suggestion that that the arbitrator exceeded her authority because she did not have jurisdiction to hear the claims she decided.

In response, Griffin again incorporates herein the evidence, arguments and authorities detailed above in response to Issue No. 1 wherein Griffin demonstrated that arbitrability, including issues of jurisdiction, may be decided by the Arbitrator where the parties have requested, as here, that the Arbitrator so decide. In *Aspri*, p. 6, the Court stated clear and well-settled Texas law:

> We review de novo the trial court's judgment confirming an arbitration award "while giving strong deference to the arbitrator with respect to issues properly left to the arbitrator's resolution." *Xtria L.L.C. v. Int'l Ins. Alliance Inc.,* 286 S.W.3d 583, 591 (Tex. App.— Texarkana 2009, pet. denied); *see Centex/Vestal v. Friendship W. Baptist Church,* 314 S.W.3d 677, 683 (Tex. App.—Dallas 2010, pet. denied); *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.,* 126 S.W.3d 257, 262 (Tex. App.—San Antonio 2003, pet. denied). Judicial review of arbitration awards is "extraordinarily narrow." *E. Tex. Salt Water Disposal Co. v. Werline,* 307 S.W.3d 267, 271 (Tex. 2010). Courts are to indulge all reasonable presumptions in favor of the award…. *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex. 2002); *Centex/Vestal,* 314 S.W.3d at 683.

In essence, Southwinds admits in its brief that this argument arises from the suggestion that the Arbitrator "dispensed her own justice" by carefully considering the facts and ruling in Griffin's favor. In other words, because Southwinds lost, the Arbitrator somehow exceeded her own powers. Such a suggestion is without any legal basis and should be rejected.

27

Since Southwinds failed to meet its burden of proving all three elements with respect to the §171.088 statutory grounds for seeking vacatur of the Arbitrator's Award, the trial court committed no error in failing to vacate the award.

## REPLY POINT THREE

In response to Issue 3.

The Arbitrator's Award is not tainted by a disregard for the law or by a gross mistake in applying the law.

## ARGUMENTS AND AUTHORITIES

Southwinds' third and final argument relies yet again on the notion that the Arbitrator decided matters not covered by a valid arbitration agreement, arguing that this constitutes manifest disregard of the law and gross error.

Other than the naked assertion and conclusion that not ruling in its favor on the arbitrability issue constitutes manifest disregard for the law and gross error, Southwinds has offered no proof whatsoever of any semblance of manifest disregard or gross error.

In *Aspri, supra*, the Court stated, at 20-21:

[A] party challenging an arbitration award on the ground of gross mistake has the burden of demonstrating the arbitrators acted in bad faith or failed to exercise honest judgment. *Xtria*, 286 S.W.3d at 598; *Werline*, 209 S.W.3d at 898; *Pheng Inv., Inc. v. Rodriquez*, 196 S.W.3d 322, 330-31 (Tex. App.—Fort Worth 2006, no pet.). "Gross mistake results in a decision that is arbitrary and capricious;" whereas "a judgment rendered after honest consideration given to conflicting

28

claims, no matter how erroneous, is not arbitrary or capricious." Xtria at 598. An arbitrator's decision is arbitrary and capricious if it is the product of "willful and unreasoning action, action without consideration and in disregard of the facts and circumstances of the case." *Grand Int'l Bhd. Of Locomotive Eng'rs v. Wilson*, 341 S.W.2d 206, 211 (Tex. Civ. App.—Fort Worth 1960, writ ref'd n.r.e.).

That Aspri may disagree with the panel's credibility determinations or the weight to be given to particular evidence does not render the panel's decision arbitrary and capricious, evidence bad faith, or show a failure to exercise honest judgment. Aspri's arguments amount to nothing more than challenges to the legal and factual sufficiency of the evidence and alleged errors in the application of the substantive law, which we have no power to review. See id.; *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 435 (Tex. App.—Dallas 2004, pet. denied); *J.J. Gregory Gourmet Servs, Inc. v. Anton's Imp. Co*., 927 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1995, no writ). Aspri has not pointed to anything other than the result as evidence of bad faith or bad motive. It did not establish gross mistake and the trial court therefore did not err in denying the motion to vacate on that ground.

In *Humitech Dev. Corp. v. Perlman*, 424 S.W.3d 782, 795-96 (Tex.App.—Dallas 2014, no pet.), the Court stated:

Manifest disregard is a "very narrow" or "extremely limited" standard of review. *Xtria L.L.C. v. Int'l Ins. Alliance Inc.,* 286 S.W.3d 583, 594 (Tex. App.—Texarkana 2009, pet. denied) ("very narrow" standard); *Home Owners Mgmt. Enters., Inc. v. Dean,* 230 S.W.3d 766, 768-69 (Tex. App.—Dallas 2007, no pet.) ("extremely limited" standard). It is more than error or misunderstanding of the law. *Xtria L.L.C.,* 286 S.W.3d at 594; *Home Owners,* 230 S.W.3d at 768. The disregarding of the law is "manifest" if it was "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Xtria L.L.C.,* 286 S.W.3d at 594; *Myer v. Americo Life, Inc.,* 232 S.W.3d 401, 411. The term "disregard" implies that the arbitrator "appreciate[d] the existence of a clearly governing principle but decided to ignore or pay no attention to it." *Myer,* 232 S.W.3d at 411. "In other words, the issue is not whether the arbitrator correctly interpreted the law, but whether

the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law." *Xtria L.L.C.,* 286 S.W.3d at 594; *see Pheng Invs., Inc. v. Rodriquez,* 196 S.W.3d 322, 332 (Tex. App.—Fort Worth 2006, no pet.)) ("Under this standard, the arbitrator clearly recognizes the law but chooses to ignore it or refuses to apply it correctly."). It is appellants' burden to demonstrate that the arbitrator manifestly disregarded the law. *Xtria L.L.C.,* 286 S.W.3d at 594; *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Gross mistake is conceptually analogous to manifest disregard. *See Int'l Bank of Commerce v. Int'l Energy Dev. Corp.,* 981 S.W.2d 38, 48 (Tex. App.—Corpus Christi 1998, pet. denied). A gross mistake is a mistake that implies bad faith or a failure to exercise honest judgment and results in a decision that is arbitrary and capricious. *Xtria L.L.C.,* 286 S.W.3d at 598; *Werline v. E. Tex. Salt Water Disposal Co.,* 209 S.W.3d 888, 898 (Tex. App.—Texarkana 2006), *aff'd,* 307 S.W.3d 267, 268 (Tex. 2010); *Teleometrics Int'l, Inc. v. Hall,* 922 S.W.2d 189, 193 (Tex. App.—Houston [1st Dist.] 1995, writ denied). "A judgment rendered after honest consideration given to conflicting claims, no matter how erroneous, is not arbitrary or capricious." *Xtria L.L.C.,* 286 S.W.3d at 598. The doctrines of manifest disregard and gross mistake do not extend to mere mistakes of fact or law. Judicial review of an arbitration award "is so limited that even a mistake of fact or law by the arbitrator in the application of substantive law is not a proper ground for vacating an award." *Centex/Vestal,* 314 S.W.3d at 683; *Xtria L.L.C.,* 286 S.W.3d at 591; *Universal Computer Sys., Inc. v. Dealer Solutions, L.L.C.,* 183 S.W.3d 741, 752 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Here, Southwinds has utterly failed to provide a semblance of evidence that the Arbitrator in any way manifestly disregarded the law or committed any gross error. Here, Southwinds simply restates its flawed argument on the arbitrability of this dispute and asserts that, because the Arbitrator rejected the argument and ruled against Southwinds, that ruling must necessarily constitute manifest disregard and

gross error. Such an assertion is not only contrary to the law, it ignores the very telling fact that Southwinds voluntarily and willingly agreed in the Subcontractor Agreement to subject itself to arbitration under the AAA's rules and to allow an arbitrator to rule on those very subjects. The trial court properly agreed and correctly rejected Southwinds' suggestion that the Arbitrator's Award was in any way tainted by a disregard for the law or by a gross mistake in applying the law.

Finally, and importantly, Southwinds did not ask the trial court to vacate the arbitrator's award on the basis of manifest disregard of the law or gross error, and, therefore, Southwinds has waived its right to raise this issue on appeal.

## CONCLUSION AND PRAYER

The trial court committed no error. The Arbitrator's Award is not tainted by a disregard for the law or by a gross mistake in applying the law. The trial court's Final Order Confirming Arbitrator's Award should be affirmed.

WHEREFORE, PREMISES CONSIDERED, Appellee D.H. Griffin of Texas, Inc. respectfully prays that this Court affirm the judgment of the trial court, and for such other and further relief to which it may show itself justly entitled.

31

Respectfully submitted,

**LAPIN & LANDA, L.L.P.**

By:   /s/ Robert E. Lapin
        Robert E. Lapin
        Bar Card No. 11945050
        500 Jefferson, Suite 2000
        Houston, Texas 77002
        Phone: (713) 756-3232
        Fax: (713) 654-8704
        blapin@lapinlanda.com

**LAW OFFICE OF DON TOMLINSON**

        Don Tomlinson
        State Bar No. 24039507
        8 Loggerhead
        Hitchcock, TX 77563
        Phone (832) 444-4848
        don@dontomlinsonlaw.com

**ATTORNEYS FOR APPELLEE,**
**D.H. GRIFFIN OF TEXAS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2015, a true and correct copy of the above and foregoing Brief of Appellee was delivered to Appellant's counsel of record, Robert J. Killeen, Jr., Robert C. Stern, and Gerald M. Johnson, III, 1811 Bering Drive, Suite 120, Houston, TX 77057, pursuant to the Texas Rules of Appellate Procedure via e-service and via e-mail.

        /s/ Robert E. Lapin
        Robert E. Lapin

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 6,851 words.


                                                /s/ Robert E. Lapin
                                              Robert E. Lapin